389 A.2d 577

**PARENTS UNION FOR PUBLIC SCHOOLS IN PHILADELPHIA et al., Appellants,**

v.

**BOARD OF EDUCATION OF the SCHOOL DISTRICT OF PHILADELPHIA et al.**

Supreme Court of Pennsylvania.

Argued Nov. 17, 1977.

Decided July 27, 1978.

Reargument Denied Aug. 21, 1978.

Stephen C. Miller, Irene Solet, Steven S. Goldberg, Philadelphia, for appellants.

Vincent J. Salandria, Philadelphia, for appellee, Bd. of Ed. of the School Dist. of Philadelphia.

Leonard M. Sagot, Philadelphia, for appellee, Phila. Federation of Teachers.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This case presents the issue whether an allegation that a collective bargaining agreement contains illegal provisions is to be resolved in the first instance by the Pennsylvania Labor Relations Board.[1]

Appellants, taxpayers and students of the School District of Philadelphia, filed a complaint in equity in the Court of Common Pleas of Philadelphia to enjoin appellees, Philadelphia Federation of Teachers and the Board of Education of the school district, from complying with several provisions of the teacher-school district collective bargaining agreement. Appellants, not parties to the agreement, alleged that the challenged provisions conflicted with provisions of the Pennsylvania Constitution, Philadelphia Home Rule Charter, Local Agency Law, and Public School Code and injured them by illegally transferring control over many educational policy decisions from the School Board to the Federation.

Contending that appellants should have first sought relief before the Pennsylvania Labor Relations Board, appellees filed preliminary objections challenging the jurisdiction of the trial court. The court sustained the preliminary objections and dismissed the complaint. The Superior Court affirmed, we granted allowance of appeal,[2] and now reverse.

Appellees contend that appellants have charged them with "[r]efusing to bargain collectively in good faith" as proscribed by unfair labor practice sections 1201(a)(5) and 1201(b)(3) of Act 195.[3] Relying upon section 1301 of Act

1. This case was reassigned on July 5, 1978.

2. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp.1978).

3. Public Employe Relations Act, Act of July 23, 1970, P.L. 563, §§ 1201(a)(5) & 1201(b)(3), 43 P.S. §§ 1101.1201(a)(5) & 1101.-1201(b)(3) (Supp.1978). Section 1201(a)(5) provides:

 "Public employers, their agents or representatives are prohibited from:

 \* \* \* \* \* \*

195,[4] which gives the Board exclusive authority to enforce unfair labor practices under Act 195, appellees conclude appellants should have first sought relief before the Board.

 Like each of their companion subsections, sections 1201(a)(5) and 1201(b)(3) authorize the Board to draw upon its experience in labor relations and impose sanctions that ensure even-handed, fair, and orderly collective bargaining. In discharging its responsibility, the Board has confronted a wide range of "refusals to bargain in good faith." It has held that a public employer refuses to bargain where it refuses to furnish an employee representative records and information reasonably necessary to allow intelligent collective bargaining. *Community Mental Health Center of Beaver Co.*, 8 PPER 114. Public employers unilaterally instituting any one of a wide range of changes in working conditions refuse to bargain. E.g., *Borough of Berwick*, 3 PPER 183 (unilateral discontinuance of public employees' Christmas bonus); *Highland Sewer & Water Auth.*, 4 PPER 116 (unilateral increase in wages during negotiations). The Board has also found that unjustified delay in negotiating, *Reynolds School Dist.*, 3 PPER 228, and "take it or leave it" bargaining tactics, *Borough of Berwick*, supra, violate Act 195.

> (5) Refusing to bargain collectively in good faith with an employe representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative."
>
> Section 1201(b)(3) provides:
> "Employe organizations, their agents, or representatives or public employes are prohibited from:
> * * * * * *
> (3) Refusing to bargain collectively in good faith with a public employer, if they have been designated in accordance with the provisions of this act as the exclusive representative of employees in an appropriate unit."

4. Section 1301, 43 P.S. § 1101.1301, provides:
> "*Exclusive power in board to prevent unfair practices*
> The board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair practice listed in Article XII of this act [defining unfair labor practices]. This power shall be exclusive and shall not be affected by any other means of adjustment or prevention that have been or may be established by agreement, law, or otherwise."

■ In those cases, unlike here, the complaining party alleged and demonstrated the existence of coercive tactics frustrating fair collective bargaining. By contrast, appellants here attack the agreement, in which they perceive an illegal shift in responsibility for educational policymaking. They are not asking for an investigation of alleged unfair bargaining tactics. Indeed, nothing in the record demonstrates that appellees refused to bargain fairly and in good faith. The Board's expertise in analyzing bargaining tactics and settling labor disputes therefore cannot contribute to resolution of the substantive validity of appellees' agreement. Nothing in Act 195 indicates that the Legislature wished the Board, in the first instance, to pass upon this kind of complaint. A contrary interpretation of Act 195 would read "refusing to bargain" out of sections 1201(a)(5) and 1201(b)(3) and distort the commonly understood meaning of "good faith." We therefore conclude that appellants properly took their complaint to a court of common pleas.[5]

Accordingly, order of the Superior Court and decree of the court of common pleas reversed and case remanded for proceedings consistent with this opinion. Each party pay own costs.

Mr. Justice PACKEL did not participate in the decision of this case.

Mr. Justice MANDERINO filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I must dissent. The gravamen of appellants' complaint is that appellees went beyond the bounds of permissible bargaining by entering into a collective bargaining agreement containing provisions violative of state statutes. This Court

5. *NLRB v. Amalgamated Lithographers of America*, 309 F.2d 31 (9th Cir. 1962), a case involving the federal analogue of section 1201(b)(3) of Act 195, is not to the contrary. That case held that a union insisting upon the inclusion of an illegal clause in a collective bargaining agreement refused to bargain in good faith. A careful reading of that case reveals that the union's unfair labor practice was not the attempt to bargain over an illegal clause, but rather its refusal to bargain unless the illegal clause were included in the agreement.

has unambiguously stated that it is within the PLRB's jurisdiction to determine what is bargainable under Act 195. *PLRB v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975). The majority fails to even cite this case. Clearly, there is no basis for dispensing with the PLRB's expertise merely because a third party is bringing the suit as to what is bargainable.

The majority view violates a long established and salutary principle that the judicial system should defer to the expert administrative agency in the first instance when an action is brought that falls within the agency's area of expertise. We have deviated from this principle only when the legislature has clearly told us to do so. For example, we did not defer *when a statute provided* that administrative remedies *are cumulative and in addition* to legal and equitable remedies and shall not abridge or alter rights of action at law. *Feingold v. Bell of Pa.*, 477 Pa. 1, 383 A.2d 791 (1977). Furthermore, in *Feingold* we determined that the PUC did not have *primary* jurisdiction. Today, the majority ousts the PLRB of its *exclusive* jurisdiction explicitly granted to it by the legislature.

Section 1301 of the Act vested the PLRB with *exclusive* power to prevent unfair labor practices:

"The board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair practice listed in Article XII of this act. This power shall be exclusive and shall not be affected by any other means of adjustment or prevention that have been or may be established by agreement, law, or otherwise." (Footnote omitted.)

43 P.S. § 1101.1301 (Supp. 1977–78).

Under Section 1201 of PERA, it is an unfair labor practice for employers or employes to refuse to bargain in good faith. 43 P.S. § 1101.1201(a)(5) provides:

"(a) Public employers, their agents or representatives are prohibited from . . .

(5) Refusing to bargain collectively in good faith . . ."
and 43 P.S. § 1101.1201(b)(3) states:

"(b) Employe organizations, their agents or representatives or public employes are prohibited from . . .

(3) Refusing to bargain collectively in good faith with a public employer . . . ."

Bargaining in good faith requires more than a mere desire to reach an agreement. It requires parties to bargain within the legal limits permitted by PERA. Section 703 of PERA provides as follows:

"The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters."
43 P.S. § 1101.703 (Supp. 1977–78).

Bargaining over provisions which are illegal cannot be good faith bargaining, and constitutes an unfair labor practice. Section 1304 of PERA, *id.* § 1101.1304, specifically recognizes that the inclusion of certain provisions by the parties in a collective bargaining agreement may constitute an unfair labor practice. In relevant part that section provides:

"[A]ny agreement made between an employer and a bona fide employe organization, and all the provisions thereof, should be entitled to full force and effect unless the board specifically finds that these provisions involve the commission of an unfair labor practice within the meaning of [Section 1201]."

The view that bargaining as to illegal provisions is not bargaining in good faith and constitutes an unfair labor practice is also the view taken under federal law. In *NLRB v. Amalgamated Lithographers of America*, 309 F.2d 31, 51 LRRM 2093 (9th Cir. 1962), *cert. denied* 372 U.S. 943, 82 S.Ct. 936, 9 L.Ed.2d 968 (1963), the Ninth Circuit Court of Appeals held that a union committed an unfair labor prac-

tice in refusing to bargain in good faith when the union insisted upon the inclusion of an illegal contract provision. *Cf. NLRB v. Wooster Division of Borg Warner Corp.*, 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1948).

The majority holds that since there was no refusal to bargain by either of the appellees appellants cannot be investigating unfair bargaining tactics. I am not persuaded that because the parties *voluntarily* agreed to include illegal provisions, there was no unfair labor practice. In view of the practical, coercive pressures of collective bargaining, which vary depending on the respective bargaining power of the parties involved, I think it impossible to make evanescent distinctions between those provisions which one party purportedly "insisted on," and those which both parties purportedly agreed to "voluntarily."

Furthermore, Section 1302 of the PERA gives authorization to "any interested party" to bring an unfair labor practice charge before the PLRB. One bringing an unfair labor complaint need not necessarily be a labor organization or an employee; the statute provides:

"Whenever it is charged by *any interested party* that any person has engaged in . . . any such unfair practice, the board . . . shall have authority to issue . . a complaint . . . . In the discretion . . . of the board, *any other person* may be allowed to intervene in the said proceeding . . . ." (Emphasis added.)

43 P.S. § 1101.1302 (Supp. 1977–78).

The PERA does not define "any interested party" and so we must give these words an ordinary meaning; such a reading would necessarily include Parents Union as an interested party. Moreover, this section gives the PLRB the discretion to permit intervention by "*any other* person." The term "person" is defined in the PERA and includes:

"[A]n individual, public employer, public employe, authority, commission, legal representative, labor organizations, employe organization, profit or nonprofit corporation, trustee, board or association."

43 P.S. § 1101.301 (10) (Supp. 1977–78).

Thus, it would not appear that there was any intent on the part of the legislature to limit the requirements for being an unfair labor charge beyond the fact that one must be "interested."

Indeed, the federal sector does not require one be a party to the labor contract to make an unfair labor charge. *Nat'l Woodwork Manufacturers Ass'n v. NLRB*, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967); *NLRB v. Indiana & Michigan Electric Co.*, 318 U.S. 9, 63 S.Ct. 394, 87 L.Ed. 579 (1943). The third circuit has specifically held that an association *not party to a contract* could file an unfair labor practice and that the NLRB rule granting such standing did not exceed the statutory grant. *NLRB v. Local 42, International Ass'n of Heat and Frost Insulators and Asbestos Workers*, 469 F.2d 163 (3d Cir. 1972), *cert. denied*, 412 U.S. 940, 93 S.Ct. 2776, 37 L.Ed.2d 399 (1973).

This dispute brought by Parents Union involves a controversy over what provisions may be included in a collective bargaining agreement. The expertise of the PLRB should be brought to bear upon questions of this nature before they reach the courts for appellate review. Furthermore, Act 195 grants *exclusive*, original jurisdiction to the PLRB. The parties could still obtain a review in the appropriate court of any order by the PLRB.

I dissent.