## Bristol Township v. Bristol Township Police Department

*Leonard B. Sokolove,* for plaintiff.
*John W. Lampi,* for defendant.

KELTON, *J.*, December 8, 1978—We are asked to decide in this appeal (1) whether or not a contract grievance arbitration decision of a labor arbitrator is appealable to this court and (2) whether the decision of that arbitrator should be set aside by us. We decide both of these questions in the affirmative.

Briefly stated, the question before the arbitrator was whether township policemen who were absent because of illness should have a full day or only one-third of a day charged against accumulated sick leave for each day of illness. The arbitrator ruled that only one-third of a day should be charged. We disagree.

The background of the controversy as set forth in the admitted pleadings of the parties is as follows. The Township of Bristol (the township) is a first class township organized under The First Class Township Code of June 24, 1931, P.L. 1206, as amended, 53 P.S. §55101 et seq. The Bristol Township Police Department (the police) is a department of the township with its uniformed employes having been established as a collective bargaining unit under the Act of June 24, 1968, P.L. 237, 43 P.S. §217.1 et seq. (hereinafter called Act 111). Under Act 111 the parties had entered into collective bargaining agreements since 1971. The most recent agreement and the one which is in question is dated November 17, 1976, and covers the calendar contract years of 1977 and 1978. Relevant portions of the contract are as follows:

## "PREAMBLE

"This agreement is entered into as of the 17th of November, 1976 and is by and between the Board of Commissioners of the Township of Bristol, Pennsylvania, hereinafter referred to as 'Board', and the Bristol Township Police Department, hereinafter referred to as the Police Department. *Any and all benefits presently enjoyed and previously negotiated shall be retained unchanged* unless specifically modified or revoked by written contract of Police Department and Board.

## "ARTICLE I
## PURPOSE

"1. It is the intent and purpose of this Agreement to assure sound and mutually beneficial working and economic relationships between the parties hereto and *to set forth herein the basic and full agreement between the parties concerning wages, hours, and conditions of employment . . .*

## "ARTICLE IX
## SICK LEAVE

"1. Sick leave shall be *earned* at the rate of one and one-quarter *days* for each month of continuous active service. Sick leave may be accumulated to a maximum total of one hundred twenty (120) *days.* Following the fourth (4th) period of illness, in any calendar year, four hours pay shall be deducted from the first day of each additional period of absence.

"2. Unused sick leave will be paid at the end of each year based on 25% of the days earned between July 1, of the previous year and June 30, of the

current year, hereinafter referred to as the computation period, subject to a reduction of 6.25% for each period of absence during the computation period. For purposes of this section, all sick *days taken* will be first charged against *days earned* during the computation period.

"3. All *days paid* to an employee will be charged against accumulated earnings with the remaining *unused sick days* accumulating to his account subject to the provisions of paragraph one of this Article.

"4. Unused sick leave will be applied for pay at time of retirement at the rate of 50% of the then existing officer's salary. . .

## "ARTICLE XI
## OVERTIME

". . . *Eight (8) hours of work shall constitute a normal work day.* A Policeman's normally scheduled work week shall consist of five (5) consecutive work days at eight (8) hours per day . . .

## "ARTICLE XXVIII
## GRIEVANCE PROCEDURE

". . .

"Step. 3. If the decision of the Township Manager is not acceptable, within 30 days, the parties agree to submit the dispute forthwith to a *single arbitrator* to be mutually selected. If they cannot agree upon an arbitrator within ten (10) days after a written request for the appointment of arbitrator has been made, they *agree to be bound* by the decision of an arbitrator selected by the American Arbitration Association. The cost of the arbitration shall be

borne equally by both Police Department and Board." (Emphasis supplied.)

The parties stipulated before the arbitrator that from 1968 to November 3, 1977, ". . . it was the practice in the Township Police Department . . ." that individual police officers absent due to illness not more than seven days, would thereafter be charged *one day* of sick leave for each *three days* of actual absence to the extent of total accumulated and earned sick leave days.

On November 3, 1977, the township manager issued a memorandum to the chief of police as follows:

"It has come to my attention that a personnel procedure is being followed in the Police Department which has no written authorization.

"Effective immediately all Police Personnel will be charged 8 (eight) hours sick leave for each day taken. This pertains particularly to the practice of charging only 1/3 day sick leave based on the premise that the Township recovers 2/3rds of the salary. The Township only submits accident and health claims for employees who have exhausted their sick leave benefits."

Thereafter the police submitted a grievance against the township by reason of the township manager's order and the grievance ultimately was presented to an arbitrator appointed by the American Arbitration Association pursuant to the grievance procedure in the collective bargaining agreement. On August 4, 1978, the arbitrator, after hearing, rendered an award in which he stated "the grievance is granted. The practice of charging sick leave used against accumulations of sick leave by

police officers is to be restored to that prior to November 3, 1977. That practice is to be considered as having been uninterrupted."

On August 23, 1978, the township filed an application for review of the arbitrator's award pursuant to Pa.R.C.P. 247. In its application, the township averred the foregoing facts, all of which are admitted in the answer filed by the police. In addition, the township averred in paragraph 7 that "the Award of the Arbitrator is subject to review by this Court, pursuant to Pa.R.C.P. 247." The police have filed an answer to the application admitting paragraph 7, but now take the position in their brief that an arbitrator's decision is appealable only (1) where the award requires a political subdivision to implement contract terms which are contrary to the governing statutes or (2) where the award reforms the employment agreement in a manner which would require action by the governing body. The police contend, however, that the appeal in this case falls into neither of these two categories but involves merely a question of contract interpretation. The police then argue that on issues of interpretation there is nothing in the decisional law precluding a township from accepting binding arbitration. We do not agree, however, that the question herein is merely an interpretation problem; it involves rather a problem of unconstitutional exercise by others of the authority vested in the elected board of commissioners.

We find that the improper exercise is two-fold. First, the township commissioners did not and could not delegate their authority to fix the compensation of the police force by a past practice not officially authorized under The First Class Town-

ship Code, 53 P.S. §56401,[1] and second the commissioners could not delegate to an arbitrator the final and binding authority to use that past practice to alter the plain language of their own collective bargaining agreement. Therefore, even if the arbitrator's decision is construed to be a common law arbitration, the challenged decision was "contrary to constitutional, legislative or administrative mandate" and therefore subject to being set aside by a court on appeal. Compare United Services Automobile Association Appeal, 227 Pa. Superior Ct. 508, 323 A. 2d 737 (1974), and Gallagher v. Educator and Executive Insurers, 252 Pa. Superior Ct. 414, 381 A. 2d 986 (1977).

Under article III, §31, of the Pennsylvania Constitution, the general assembly is forbidden to delegate to any special commission any power to perform any municipal function. The second sentence of §31 then provides that:

"Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of *panels or commissions,* selected and acting in accordance with law *for the adjustment or settlement of grievances or disputes or for collective bargaining* between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer,

---

1. 53 P.S. §56401 provides: "The board of township commissioners shall, subject to the civil service provisions of this act, appoint and fix the number, rank and compensation of the members of the township police force . . . The board of commissioners shall prescribe all necessary rules and regulations for the organization of the police force. . . ."

or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings." (Emphasis supplied.)

The enactment of the general assembly which implements article III, §31, is Act 111. In construing Act 111 it is important to make a distinction between what are properly termed *collective bargaining impasse arbitration* panels, which are clearly authorized under both article III, §31, and under section 4 of Act 111, and a single arbitrator *contract grievance arbitration* which is not authorized under either the constitution or the statute. As to the constitution, we hold that a single arbitrator is not a "panel or commission" within the meaning of that term. As to the statute (Act 111, sec. 4), we hold that the arbitrator is not a "board of arbitration" appointed under section 4 of Act 111 to resolve an impasse or stalemate in the collective bargaining process.

With reference to contract grievance arbitrations, if a negotiated collective bargaining agreement provides that the decision of the grievance arbitrator is binding upon the municipality without the consent of the municipality, such an agreement would be unconstitutional under article III, §31. See Cheltenham Township v. Cheltenham Police Department, 8 Pa. Commonwealth Ct. 360, 365, 301 A. 2d 430 (1973), and Allegheny County Firefighters, Local 1038, International Association of Firefighters v. Allegheny County, 7 Pa. Commonwealth Ct. 81, 89, 299 A. 2d 60 (1973).

As the Commonwealth Court stated in the Allegheny case, ". . . a grievance procedure such as the one here in question which provides for ultimate binding arbitration of disputes unresolved by prior steps in the procedure is a clear second delegation of authority to a non-governmental body . . ."

We also find that the arbitrator's decision was contrary to the plain language of the collective bargaining agreement itself. In addition to the specific details contained in the various collective bargaining agreements, the board of commissioners of the township had previously taken specific action to establish rules and regulations for the police department and to provide for the general operation of the department. Under Ordinance §612 adopted on August 21, 1968, the township commissioners provided that regulations with respect to sick leave ". . . shall be established by resolutions adopted by the Board of Commissioners as recommended by the Chief of Police and the Township Manager."

We have examined the evidence submitted to the arbitrator and do not find that there was any evidence presented which would justify a conclusion that the informal past practice of charging only one day of sick leave for each three days of actual absence was ever approved by the board of commissioners. Although it may have been a "benefit," it was not "previously negotiated" within the meaning of the preamble to the contract agreement. We have concluded from our review of the record that the practice evolved without any formal authorization by the board.

We, therefore, conclude that the legal right to this unusual benefit has never been satisfactorily established or legally created and accordingly must fall. Compare Radosti v. Township of Lower Makefield,

30 Pa. Commonwealth Ct. 297, 300, 373 A. 2d 1156 (1977), and Templeton Appeal, 399 Pa. 10, 12-13, 159 A. 2d 725 (1960). The arbitrator's interpretation of the collective bargaining agreement was not derived from the agreement itself as viewed in the light of its plain language, context, and other indicia of the parties intention. Compare County of Allegheny v. Allegheny County Prison Employees Independent Union, 476 Pa. 27, 381 A. 2d 849, 853-854 (1977) (Act 195 grievance arbitration of contract with broad integration clause).

Having concluded that the creation of the sick pay practice by the unidentified representatives of the township and the affirmance of that practice by the arbitrator was an improper attempt to exercise authority which was not capable of being delegated by township commissioners, we are compelled to set aside the arbitrator's decision. The common pleas court not only has the power but the duty to set aside either formal or informal collective bargaining arrangements which contain illegal provisions improperly transferring governmental policy decision making responsibility to unauthorized persons or agencies. Compare Parents Union for Public Schools in Philadelphia v. Board of Education of the School District of Philadelphia, 480 Pa. 194, 389 A. 2d 577 (1978).

Accordingly, we enter the following

## ORDER

And now, December 8, 1978, the court, after having reviewed the record of these proceedings and the award of the arbitrator, does hereby strike the said award and set it aside.