423 A.2d 1014

Mary ROBINSON et al., Appellants,

v.

ABINGTON EDUCATION ASSOCIATION and Mike
Mecklowitz et al. and Board of Directors of the
Abington School District.

Supreme Court of Pennsylvania.

Argued April 22, 1980.

Decided Oct. 31, 1980.

Reargument Denied Dec. 22, 1980.

220

Manuel Grife, Philadelphia, for appellants.

Richard W. Rogers, Norristown, Thomas W. Scott, Harrisburg, for appellee Abington Ed. Assn. et al.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## ORDER

PER CURIAM:

The Court being equally divided, the order of the Commonwealth Court is affirmed. Each party to pay own costs.

ROBERTS, J., files an Opinion in Support of Affirmance, joined by O'BRIEN, C. J., and FLAHERTY, J.

LARSEN, J., would affirm the decree of A. Benjamin Scirica, J., of the Court of Common Pleas of Montgomery County.

KAUFFMAN, J., files an Opinion in Support of Reversal joined by NIX, J.

EAGEN, C. J., did not participate in the decision of this case.

ROBERTS, Justice, in support of affirmance.

This is an appeal from the order of the Commonwealth Court vacating a decree of the Court of Common Pleas of Montgomery County. We would affirm.[1]

Appellants, Special Education teachers and Home and School Visitors, are employees of the Abington School District and also members of appellee Abington Education Association, the collective bargaining representative for

1. This case was reassigned to this writer on October 8, 1980.

teachers employed by the school district. In July 1973 appellants filed a complaint in equity to enjoin the Association and appellee Board of Directors of Abington School District from effectuating the 1973–1974 proposed collective bargaining agreement unless salary differentials afforded appellants in the collective bargaining agreements of the two previous contract years were included.[2] Appellants subsequently amended their complaint to include allegations of not only the illegality of the collective bargaining agreement, but also the union's failure to represent their interests fairly in the collective bargaining process and misrepresentation by the union in securing membership approval of the contract.[3] Appellants also withdrew their petition for a preliminary injunction based on the parties' stipulation that if the exclusion of the salary differential was finally determined to be unlawful, the differential would be paid to appellants retroactive to the effective date of the contract.

The court of common pleas dismissed appellees' preliminary objections challenging the jurisdiction of the trial court. After trial on the merits, the court ordered reformation of the collective bargaining agreement to include a five–percent differential salary increment for the Special Education teachers and a three–percent differential increment for the Home and School Visitors. The Commonwealth Court vacated the trial court's order, holding that the trial court lacked equity jurisdiction since the Public School Code and the Public Employe Relations Act provided an adequate remedy at law. While we agree with the Commonwealth Court's order vacating reformation of the collective bargaining agreement, we base our decision on different grounds. We conclude that the trial court properly exer-

2. During the school years 1971–72 and 1972–73 Special Education teachers had received a salary differential of five percent of the base salary and the Home and School Visitors had received a salary differential of three percent of the base salary. The School Board has taken the position of a disinterested stakeholder, willing to pay whatever salary increase is determined to be legally required.

3. The last two allegations have been abandoned on appeal and therefore are deemed waived.

cised its equity jurisdiction to determine the substantive validity of the collective bargaining agreement, but that it erred in holding the agreement invalid under state law.

## I

█ It is axiomatic that in order for a court to grant equitable relief to redress the violation of a legal right, the remedy available at law must be inadequate. Dobbs, Remedies § 2.5 (1973). Here the relief sought by appellants is reformation of a collective bargaining agreement to provide a salary increase reflecting differentials allegedly mandated by state law. Appellants claim that the collective bargaining agreement is illegal because the deletion of salary differentials (1) constitutes a demotion in violation of 24 P.S. § 11–1151, and (2) violates the minimum salary schedule mandated by 24 P.S. §§ 11–1142 and 11–1152. The jurisdictional question, therefore, is whether the administrative procedures provided by the Public School Code and the Public Employe Relations Act are adequate to adjudicate the legality of the collective bargaining agreement. We conclude that they are not.

█ The statutory procedure provided by the Public School Code for contesting demotions does not apply because appellants' claim of an unlawful demotion is unfounded. Demotion requires either a reduction in salary amount or a change in type of position. 24 P.S. § 11–1151;[4] *Norwin School District v. Chlodney*, 37 Pa.Cmwlth. 284, 286, 390 A.2d 328, 330 (1978). Here, the Special Education teachers and the Home and School Visitors have simply failed to secure an anticipated salary increase.

4. 24 P.S. § 11–1151 provides in relevant part:
   "[T]here shall be no demotion of any professional employe either in salary or in type of position, except as otherwise provided in this act, without the consent of the employe, or, if such consent is not received, then such demotion shall be subject to the right to a hearing before the board of school directors and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe."

Like the Public School Code, the Public Employe Relations Act also does not provide an adequate remedy at law. In *Parents Union for Public Schools in Philadelphia v. Board of Education of the School District of Philadelphia*, 480 Pa. 194, 389 A.2d 577 (1978), we held that a claim that a collective bargaining agreement contains illegal provisions need not be resolved in the first instance by the Pennsylvania Labor Relations Board (PLRB) but can properly be adjudicated by a court of common pleas. Our decision was based on the rationale that

> "[appellants] are not asking for an investigation of alleged unfair bargaining tactics. Indeed, nothing in the record demonstrates that appellees refused to bargain fairly and in good faith. The Board's expertise in analyzing bargaining tactics and settling labor disputes therefore cannot contribute to resolution of the substantive validity of appellees' agreement. Nothing in Act 195 indicates that the Legislature wished the Board, in the first instance, to pass upon this kind of complaint."

Id., 480 Pa. at 198, 389 A.2d at 579. Although appellants' complaint alleged not only the illegality of the agreement but also unfair labor practices, the inclusion of these additional claims which are within the exclusive jurisdiction of the PLRB,[5] does not operate to divest the court of jurisdiction to determine the substantive validity of the agreement. Assuming that the teachers filed a complaint with the PLRB and obtained a Board order to bargain in good faith, the issue of minimum salaries required by the Public School Code would still remain. As the School Board has taken the position of a disinterested stakeholder, willing to pay whatever increase is required by law, see note 2 supra, the question under the Code must inevitably be answered by the courts.

5. The allegations in the amended complaint of the union's failure to represent appellants' interests fairly in the collective bargaining process and the union's misrepresentations in securing membership approval of the contract are unfair labor practice charges, 43 P.S. § 1101.1201(b)(3). See *Vaca v. Sipes*, 386 U.S. 173, 177, 87 S.Ct. 903, 909–10 (1967). They are thus within the exclusive jurisdiction of the PLRB, 43 P.S. § 1101.1301.

## II

Resolution of the legality of a collective bargaining agreement which excludes salary differentials provided in past contracts is governed by this Court's recent unanimous decision in *Wildrick v. Board of Directors of Sayre Area School District*, 491 Pa. 25, 417 A.2d 617 (1980).

In *Wildrick* this Court held that the Public School Code, 24 P.S. § 11–1142, prescribes the minimum salary amount that school districts throughout the Commonwealth must pay their professional employees. Only those employees who had been paid an amount less than the mandatory minimum statewide salary were granted relief. We stated:

> "Nothing contained in the Code, either as originally enacted or as amended, in any respect prescribes any particular means by which greater salaries must be determined. The sole limitation the Legislature has imposed is the requirement that a school district comply with the applicable statewide minimum salary schedule.... Thus appellants' contention that appellee improperly failed to apply the Code's revised minimum salary formulas in calculating the district's higher local salaries must be rejected."

Id., 491 Pa. at 31, 417 A.2d at 619–20.

As the Public School Code does not provide a formula to be used in calculating local salary schedules, but prescribes only a minimum salary amount, whether there is to be a differential among teachers' salaries which exceed the state required minimum is a contractual matter to be resolved through collective bargaining. Section 11–1152 of the Code specifically states:

> "§ 11–1152. Compensation in excess of schedule; temporary or emergency increases
>
> The foregoing schedules prescribe a minimum salary in each instance, and where an increment is prescribed, it is also a minimum. It is within the power of the boards of school directors to increase for any person or group of persons, included in any schedule, the initial salary or the amount of an increment or the number of increments.

Nothing contained in this act shall be construed to interfere with or discontinue any salary schedule rights, tenure rights, or other privileges or terms of employment now or heretofore in force in any school district, provided such shall meet the requirements of this act, nor to prevent the adoption of any salary schedule in conformity with the provisions of this act."

If teachers are dissatisfied with salary provisions in a collective bargaining agreement which meet the statutory minimum requirements, their remedy, if any, is through the Pennsylvania Labor Relations Board on an unfair labor practice charge. Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, No. 195, art. 1 et seq., 43 P.S. § 1101.101 et seq. Of course, in this case this remedy has been waived by appellants' express disavowal on appeal that any unfair labor practice was committed.

The order of the Commonwealth Court vacating reformation of the collective bargaining agreement should be affirmed.

O'BRIEN, C. J., and FLAHERTY, J., join in this opinion in Support of Affirmance.

KAUFFMAN, Justice, in support of reversal.

On July 3, 1973, appellants, state certified Special Education Teachers and Home and School Visitors [1] of the Abington School District, filed a complaint in equity against the Abington Education Association and members of its negotiating committee ("Association") [2] and the Board of School Directors of Abington School District ("School Board"), seeking to reform the collective bargaining agreement negotiated by the Association and the School Board for the

1. Special Education Teachers teach and manage various levels of retarded children. Home and School Visitors act as liaisons between home, school, and community.

2. The Association is the certified bargaining agent for all Abington school teachers.

1973–74 school year.[3]  Appellants contended that they had been illegally deprived of salary differentials provided for under previous contracts and mandated by the Public School Code.[4]  In a decree *nisi*, affirmed by the court *en banc*, the Court of Common Pleas of Montgomery County ordered reformation of the collective bargaining agreement to include the salary differentials.  The Commonwealth Court vacated the final decree on jurisdictional grounds.  We granted allowance of appeal.[5]

Since 1963, every contract negotiated between the Association and the School Board has provided for a salary differential for Special Education Teachers and, since 1968, for Home and School Visitors.[6]  For the 1971–72 and 1972–73 school years, Special Education Teachers received a five percent position differential and Home and School Visitors received a differential of three percent.  During the negotiations leading up to the 1973–74 collective bargaining agreement, the Association rejected a School Board proposal which would have maintained the differentials.[7]  Thus, *all* differentials were eliminated and Abington School District teachers with equal education and years of service all re-

---

3.  By stipulation, the complaint was amended and the matter proceeded as a class action on behalf of all Special Education Teachers and Home and School Visitors employed by the Abington School District.

4.  Act of March 10, 1949, P.L. 30, art. 1, *as amended*, 24 P.S. §§ 1–101 *et seq.*

5.  Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 724.

6.  Appellants received the base pay for all teachers (determined by educational credentials and years of service) plus an additional percentage of the base pay.

7.  Throughout this litigation, the School Board has been willing to pay the differentials retroactively and without affecting any other term of the contract negotiated.

ceived equal pay, regardless of their special training and certification.[8] By stipulation, the 1973–74 collective bargaining agreement became effective on July 1, 1973, without prejudice to the rights of the parties to this litigation.

Against this factual background, the Chancellor concluded (1) that the court had jurisdiction, (2) that appellants had been demoted without the procedural safeguards provided by Section 1151 of the Public School Code, 24 P.S. § 11–1151, and (3) that the 1973–74 collective bargaining agreement was void and unenforceable because it failed to provide for the salary differentials mandated by Section 1142 of the Public School Code, 24 P.S. § 11–1142. The Chancellor then reformed the collective bargaining agreement to include a five percent salary differential for the Special Education Teachers and a three percent differential for the Home and School Visitors. After dismissal of its exceptions by the court *en banc*, the Association appealed to the Commonwealth Court, contending that appellants had an adequate statutory remedy for their alleged improper demotions and that any alleged unfair labor practice was within the exclusive original jurisdiction of the Pennsylvania Labor Relations Board (PLRB).[9] The Commonwealth Court agreed on both points and vacated the final decree of the Court of Common Pleas.

The gravamen of appellants' complaint was the illegality of the salary provisions of the 1973–74 collective bargaining agreement: (1) denial of the differential to the Special Education Teachers violated the minimum salary schedules mandated by Section 1142 of the Public School Code, 43 P.S. § 11–1142 and (2) discontinuance of the differential constituted a salary demotion without the procedures guaranteed by Section 1151 of the Public School Code, 24 P.S. § 11–1151. Hence, argue appellants, the collective bargaining agree-

8. The salaries of all teachers were set above the minimums mandated by Section 1142 of the Public School Code. 24 P.S. § 11–1142.

9. Because the School Board was willing to continue paying the salary differentials, it neither filed exceptions nor appealed.

ment was in contravention of Section 703 of the Public Employee Relations Act ("Act 195") which provides:

> The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters.

43 P.S. § 1101–703.[10]

I

In *Parents Union v. Board of Education of the School District of Philadelphia*, 480 Pa. 194, 196, 389 A.2d 577, 578 (1978), this Court addressed the precise question involved here: "whether an allegation that a collective bargaining agreement contains illegal provisions is to be resolved in the first instance by the Pennsylvania Labor Relations Board." Appellants therein, taxpayers and students of the School District of Philadelphia, had filed a complaint in equity seeking to enjoin implementation of allegedly illegal provisions of a collective bargaining agreement negotiated by the union and the school district. There, as here, appellees filed preliminary objections challenging the jurisdiction of the trial court because appellants had alleged, in effect, a "[refusal] to bargain collectively in good faith," an unfair labor practice under Section 1201 of Act 195, 43 P.S. §§ 1101.-1201(a)(5) and 1101.1201(b)(3), and a matter within the exclusive original jurisdiction of the PLRB, 43 P.S. § 1101.1301. In rejecting the jurisdictional challenge, this Court held:

> Like each of their companion subsections, sections 1201(a)(5) and 1201(b)(3) authorize the Board to draw upon its experience in labor relations and impose sanctions that ensure even–handed, fair, and orderly collective bargaining. In discharging its responsibility, the Board has

10. Act of July 23, 1970, P.L. 563, No. 195, *as amended*, 43 P.S. § 1101.101 *et seq.*

confronted a wide range of "refusals to bargain in good faith." It has held that a public employer refuses to bargain where it refuses to furnish an employee representative records and information reasonably necessary to allow intelligent collective bargaining. *Community Mental Health Center of Beaver Co.*, 8 PPER 114. Public employers unilaterally instituting any one of a wide range of changes in working conditions refuse to bargain. *E. g., Borough of Berwick*, 3 PPER 183 (unilateral discontinuance of public employees' Christmas bonus); *Highland Sewer & Water Auth.*, 4 PPER 116 (unilateral increase in wages during negotiations). The Board has also found that unjustified delay in negotiating, *Reynolds School Dist.*, 3 PPER 228, and "take it or leave it" bargaining tactics, *Borough of Berwick, supra,* violate Act 195.

*In those cases, unlike here, the complaining party alleged and demonstrated the existence of coercive tactics frustrating fair collective bargaining. By contrast, appellants here attack the agreement,* in which they perceive an illegal shift in responsibility for educational policymaking. They are not asking for an investigation of alleged unfair bargaining tactics. Indeed, nothing in the record demonstrates that appellees refused to bargain fairly and in good faith. *The Board's expertise in analyzing bargaining tactics and settling labor disputes therefore cannot contribute to resolution of the substantive validity of appellees' agreement.* Nothing in Act 195 indicates that the Legislature wished the Board, in the first instance, to pass upon this kind of complaint.

480 Pa. at 197–98, 389 A.2d at 578–579 (Emphasis added).

There is no relevant distinction between *Parents Union* and the instant case. Indeed, appellants expressly disclaim any challenge of the motivation or the good faith of the Association in its bargaining tactics with the School Board.[11]

11. Section 1201 of Act 195 prohibits employee organizations, their representatives or agents from "[r]efusing to bargain collectively in

The issue here raised is the legality of certain terms of the collective bargaining agreement. The expertise of the PLRB in the area of labor relations would not contribute to a determination of whether the terms of a collective bargaining agreement violate certain provisions of the Public School Code. Accordingly, I would hold that the Court of Common Pleas correctly assumed jurisdiction over the alleged illegality of the 1973–74 collective bargaining agreement.

I now consider the merits of appellants' contention that the salary provisions of the 1973–74 collective bargaining agreement, as they apply to the Special Education Teachers,[12] violate the minimum salary schedule mandated by Section 1142 of the Public School Code, 24 P.S. § 11–1142, which provides in relevant part:

§ 11–1142. Minimum salaries and increments

(a) Except as hereinafter otherwise provided, all school districts and vocational school districts *shall pay* all regular and temporary teachers, supervisors, directors and coordinators of vocational education, psychologists, teachers of classes for exceptional children, supervising principals, vocational teachers, and principals in the public schools of the district the minimum salaries and increments for the school year 1968–1969 and each school year thereafter, as provided in the following tabulation *in accordance with the column in which the professional*

good faith with a public employer, if they have been designated ... as the exclusive representative of employees in an appropriate unit." 43 P.S. § 1101.1201(b)(3). The duty of good faith imposed by section 1201 runs between an employee representative and the employer. The breach of this duty, then, is an unfair labor practice, exclusive jurisdiction over which lies in the PLRB. In addition, the union, as the exclusive bargaining representative, owes a duty to represent all members of the bargaining unit fairly and in good faith. Contrary to what the opinion in support of affirmance states, breach of this duty is not designated an unfair labor practice by Act 195, and hence, is not a matter within the exclusive jurisdiction of the PLRB.

12. Appellants *do not assert* that the Home and School Visitors are entitled to the differential under Section 1142.

*employe is grouped* and the step which the professional employe has attained by years of experience within the school district each step after step 1 constituting one year of service. When a school district, by agreement, places a professional employe on a step in the salary scale, each step thereafter shall constitute one year of service. When a district adopts a salary scale in excess of the mandated scale, it shall not be deemed to have altered or increased the step which the employe has gained through years of service. (Emphasis supplied)

(b) Professional employes *shall be grouped* in the following columns:

Class A. Teachers holding a standard certificate valid for the subjects or grades in which the teacher is giving instruction.

Class B. Teachers holding a college certificate valid for the subjects or grades in which the teacher is giving instruction.

Class C. Teachers of classes approved by the Department of Public Instruction for exceptional children holding a standard certificate valid for the subjects or grades in which the teacher is giving instruction.

Class D. Teachers of classes approved by the Department of Public Instruction for exceptional children holding a college certificate valid for the subjects or grades in which the teacher is giving instruction. (Emphasis supplied) [13]

\*　　\*　　\*　　\*　　\*　　\*

13. Classes "E" through "P", which include supervisory personnel, psychologists, principals, and vocational teachers employed for the entire calendar year, and the corresponding Minimum Salary Schedules are not sufficiently relevant to reproduce here.

## (d)  Subsequent Minimum Salary Schedule [14]

| | A | B | C | D |
|---|---|---|---|---|
| 13 |  | 9600 |  | 9800 |
| 12 | 9300 | 9300 | 9500 | 9500 |
| 11 | 9000 | 9000 | 9200 | 9200 |
| 10 | 8700 | 8700 | 8900 | 8900 |
| 9 | 8400 | 8400 | 8600 | 8600 |
| 8 | 8100 | 8100 | 8300 | 8300 |
| 7 | 7800 | 7800 | 8000 | 8000 |
| 6 | 7500 | 7500 | 7700 | 7700 |
| 5 | 7200 | 7200 | 7400 | 7400 |
| 4 | 6900 | 6900 | 7100 | 7100 |
| 3 | 6600 | 6600 | 6800 | 6800 |
| 2 | 6800 | 6800 | 6500 | 6500 |
| 1 | 6000 | 6000 | 6200 | 6200 |

\*    \*    \*    \*    \*    \*

24 P.S. § 11–1142.

The Special Education Teachers claim that they are members of Class D and, as such, are entitled to a salary higher than that paid to teachers of ordinary children, i. e., teachers in Class A and Class B.[15] The Association, however, argues, and the majority agrees, that once the actual contractual salary of the Special Education Teachers exceeds the minimum amount required by Section 1142, the classification

14. The Minimum Salary Schedule reprinted here is effective for years subsequent to the 1968–69 school year, and hence, governs minimum allowable salaries for the school year here in question. I note that the enacted schedule establishes the *minimum* salaries for *defined classes* of professional employees.

15. Exceptional children are defined as: "[P]ersons of school–age who deviate from the average in physical, mental, or social characteristics to such an extent that they require special educational programs, facilities, or services and shall include all school–aged persons in detention homes and state schools and hospitals," 22 Pa.Code § 13.1, and include physically and mentally handicapped children as well as gifted children, with outstanding creative or intellectual ability. *Id.*

differential becomes irrelevant. In other words, if all teachers are paid an amount greater than the *highest* minimum amount mandated by the salary schedule, then it is permissible to pay all teachers equal amounts, without regard to classification. Such a reading would thwart the very purpose for which the statute was enacted and render meaningless the entire legislative fabric of grouping professional employees in Classes A through P.[16]

Section 1142 was intended not only to assure a certain minimum salary for all teachers, but also to encourage training and certification in difficult areas where there traditionally has been a shortage of qualified teachers. A salary schedule classifying *all* teachers at a common level, regardless of how high the salary, would conflict with this intended incentive. An examination of past legislation reveals that a $200 differential for teachers of exceptional children has been part of the minimum salary schedule since the 1956–57 school year.[17]

16. Every statute must "be construed, if possible, to give effect to all its provisions." *Commonwealth v. Hill*, 481 Pa. 37, 391 A.2d 1303 (1978); *Triumph Hosiery Mills v. Commonwealth*, 469 Pa. 92, 364 A.2d 919 (1976); Statutory Construction Act, 1 Pa.C.S.A. § 1921(a). "The Legislature cannot be deemed to intend that its language be superfluous and without import." *Triumph Hosiery Mills, supra,* citing *Daly v. Hemphill*, 411 Pa. 263, 191 A.2d 835 (1963). Since the *only* purpose for the statutory grouping of professional employees in classes is to mandate salary differentials according to training, certification and job responsibilities, elimination of the differentials would effectively frustrate clear legislative intent.

Further, the reliance on *Wildrick v. Board of Directors of Sayre Area School District*, 491 Pa. 25, 417 A.2d 617 (1980) in the opinion in support of affirmance is misplaced. Unlike this case, *Wildrick* in no way involved statutorily mandated salary differentials based upon defined classifications. In *Wildrick*, this Court expressly recognized the obligation of school districts to pay professional employees "according to the statewide minimum salary schedule then in effect." 491 Pa. at 29, 417 A.2d at 619. Rather than adhere to the standard thus enunciated, the opinion in support of affirmance emasculates it by totally ignoring the classifications provided for by the Legislature as an integral part of the Minimum Salary Schedule.

17. In the 1956 amendment to the Public School Code of 1949, Act of June 1, 1956, P.L. 1948, § 3, the legislature, for the first time, mandated a $200 premium for "teachers of classes for physically and mentally handicapped pupils." In 1965, that classification was amended to read "teachers of classes for exceptional children." Act of Dec. 9, 1965, P.L. 1057, § 2.

Although the base salary required by law has been increased over the years, the differential has remained constant at $200. This clearly evidences an intent on the part of the legislature to maintain a $200 differential between regular and Special Education Teachers. Thus, I would hold that any provision of a collective bargaining agreement abrogating the statutorily mandated $200 differential for Special Education Teachers is void and unenforceable.[18]

## II

Appellants further assert that although their gross salary was increased by the terms of the 1973–74 collective bargaining agreement, the elimination of the traditional differential for both Special Education Teachers and Home and School Visitors constituted a demotion without procedural safeguards in violation of Section 1151 of the Public School Code, 24 P.S. § 11–1151.[19]

Section 1151 provides in pertinent part:

The salary of any . . . professional employe in any school district may be increased at any time during the term for which such person is employed, whenever the board of school directors of the district deems it necessary or advisable to do so, but there shall be no demotion of any professional employe either in salary or in type of position, except as otherwise provided in this act, without the consent of the employe, or, *if such consent is not received, then such demotion shall be subject to the right to a hearing before the board of school directors and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe.*

24 P.S. § 11–1151 (Emphasis added). Thus, any alleged demotion could have been challenged at a hearing before the

18. The record supports the conclusion that Special Education Teachers teach "classes approved by the Department of Public Instruction for exceptional children," 24 P.S. § 11–1142, and that they thus qualify for the differential. Home and School Visitors, on the other hand, do not teach such classes and, therefore, are not entitled to the statutorily mandated differential.

19. Appellants did not consent to the deletion of salary differentials from the 1973–74 collective bargaining agreement.

School Board, 24 P.S. § 11–1127, with the right of appeal to the Secretary of Education, 24 P.S. § 11–1131, and with a subsequent right of appeal to the Commonwealth Court, 42 Pa.C.S.A. § 763 (Pamph.1979). I therefore conclude that adequate statutory remedies were available to appellants.

This Court has stated that "[w]hen a professional employee claims that he has been demoted it is the school board's duty to grant him a hearing. At that hearing two questions are before the school board: (1) whether or not the professional employee has been demoted either in type of position or salary, and (2) in the event the professional employee has been demoted, the reason for such demotion must be made clear and apparent." *Smith v. School District of Darby Township*, 388 Pa. 301, 319, 130 A.2d 661, 671 (1957) (footnotes omitted). If, after a hearing, it is determined that (1) an employee has been demoted and (2) the demotion was occasioned for some arbitrary or discriminatory reason, the employee is entitled to relief. *See Smith v. School District of Darby Township*, 388 Pa. at 320, 130 A.2d at 672.

Given the detailed statutory procedure for contesting a demotion, appellants were not entitled to equitable relief in the Court of Common Pleas. "It is well established that a court of equity will not invoke its jurisdiction where there is an adequate remedy at law and that statutory remedies, if adequate, must be exhausted before equitable jurisdiction may be resorted to." *Pennsylvania Life Insurance Company v. Pennsylvania National Life Insurance Company*, 417 Pa. 168, 172, 208 A.2d 780, 782 (1965).

Appellants argue that the statutory remedy is inadequate because the controversy here is not between the Association, as the employee representative, and the School Board, but rather between the Association, which effected the demotion, and some of its members.[20] Consequently, appellants

**20.** During the bargaining sessions, the School Board had proposed to continue payment of the differentials, and withdrew the offer at the eleventh hour only to avert a strike. Even after an agreement was reached, the School Board was willing to re–open negotiations for the sole purpose of inserting the differentials into the contract without changing any other provision, but the Association refused. Throughout this litigation, the School Board has taken the position of a disinterested stakeholder.

argue that pursuing the administrative remedy "would be an exercise in futility for all concerned," since the School Board is willing to pay the differentials, but is precluded from doing so because of its contract with the Association.

This argument presupposes that appellants have been demoted, an allegation subject to considerable doubt. The School Board need not conclude that a demotion has occurred simply because it at all times has been willing to maintain the differential. Accordingly, I agree with the conclusion of the Commonwealth Court that "only the School Board may demote a professional employee . . . It is thus for the School Board, in the first instance, and the Secretary of Education on appeal, to determine the demotion issues."[21] *Robinson v. Abington Education Ass'n*, 32 Pa. Cmwlth. 563, 570, 379 A.2d 1371, 1374 (1977) (citation omitted).

NIX, J., joins in this Opinion in Support of Reversal.

---

21. To hold, as does the opinion in support of affirmance, that the Public School Code does not provide an adequate remedy at law "because appellants' claim of an unlawful demotion is unfounded" (Majority op., *ante* at 1016) begs the question.