Commonwealth of Pennsylvania, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.

Association of Pennsylvania State College and University Faculties et al., Intervenors.

Argued September 16, 1981, before President Judge CRUMLISH and Judges ROGERS, BLATT, WILLIAMS, JR. and CRAIG.

*John D. Raup,* Assistant Attorney General, and *Harvey Bartle, III,* Attorney General, for petitioner.

*James L. Crawford,* Chief Counsel, for respondent.

*Jerome H. Gerber,* with him *Elliot A. Strokoff, Handler and Gerber, P.C.,* for intervenors.

OPINION BY JUDGE BLATT, January 8, 1982:

The Commonwealth, the petitioner herein, challenges a decision of the Pennsylvania Labor Relations Board (Board) which found that the Commonwealth had committed unfair labor practices in its dealings with the Association of Pennsylvania State College and University Faculties (APSCUF).

The Commonwealth and APSCUF were parties to a collective bargaining agreement which provided for annual renegotiation of salary increases for faculty members and such negotiations were commenced in September of 1977 for the 1977-78 school year. During the course of the negotiations, the Commonwealth consistently maintained that any negotiated salary increases could not be funded from the General Appropriations Act of 1977, Act of August 20, 1977, P.L. 411 (Act 11-A), and that any such increases could not be implemented without further legislative action. The negotiations reached an impasse and the dispute was referred to an arbitration panel which rendered its award on March 24, 1978, granting a 4.5% salary increase to the faculty members, retroactively effective from August 31, 1977. On April 13, 1978, the Budget Secretary of the Commonwealth wrote letters to the chairmen of the Appropriations Committees of both houses of the General Assembly, informing them of the contents of the arbitration award and of the Commonwealth's position that Act 11-A prohibited implemen-

tation of the award. Sometime subsequent to the date of the arbitration award APSCUF was told by the Secretary of Education and the Commissioner of Higher Education that they would attempt to have the arbitration award implemented, but on May 30, 1978 the Secretary of Education notified APSCUF that the Commonwealth would not comply with the salary increases required by the award. The Commonwealth implemented the increases in July of 1978 for the 1978-79 school year but refused to pay the increases for 1977-78 and APSCUF, on September 21, 1978, filed with the Board an unfair labor practice charge against the Commonwealth. The Board found that the Commonwealth violated Sections 1201(a)(1) and (5) of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, 43 P.S. §§1101.1201(a)(1) and (5), and ordered the Commonwealth to submit legislation implementing the salary increase to the General Assembly which was then to make an "appropriate legislative response" requiring at least a formal vote of the Appropriations Committee. This petition for review followed.

The Commonwealth first argues that the September 21, 1978 filing of APSCUF's unfair labor practice charge was not within the four-month statute of limitations contained in Section 1505 of PERA, 43 P.S. §1101.1505, because APSCUF knew during the course of the salary negotiations in September of 1977, as well as during the subsequent arbitration and finally by way of the April 13, 1978 Commonwealth letters to the General Assembly, that the Commonwealth did not intend to grant the salary increases concerned here.

We must dismiss this contention. The Board found that APSCUF had been given assurances by the Secretary of Education that the Commonwealth would attempt to implement the arbitration award and that

APSCUF did not have reason to believe that an unfair labor practice had occurred until May 30, 1978, when it was finally told by the Secretary of Education that the Commonwealth would not comply with the award. We must affirm such findings inasmuch as our review of the record reveals that they are supported by substantial evidence, *Pennsylvania Labor Relations Board v. Bald Eagle Area School District,* 44 Pa. Commonwealth Ct. 254, 403 A.2d 1038 (1979), and we agree with the Board that APSCUF's complaint was not barred by the relevant statute of limitations.

The Commonwealth also contends that the arbitration award in this case was merely advisory under Section 804 of PERA, 43 P.S. §1101.804,[1] because this award could not become effective without additional legislative activity.

This argument has already been rejected by this Court when we granted APSCUF's petition to confirm the very award with which we are concerned here and that decision was recently affirmed by our Supreme Court. *Association of Pennsylvania State College and University Faculties v. Commonwealth,*      Pa.     , A.2d      (No. 81-2-259, filed November 9, 1981) *affirming,* 58 Pa. Commonwealth Ct. 164, 427 A.2d 684 (1981).

The Commonwealth further maintains that the Board's conclusions that the Commonwealth violated Sections 1201(a)(1) and (5)[2] of PERA were arbitrary

---

[1] Section 804 of PERA provides:

Nothing in this article shall prevent the parties from submitting impasses to voluntary binding arbitration with the proviso the decisions of the arbitrator which would require legislative enactment to be effective shall be considered advisory only.

[2] Sections 1201(a)(1) and (5) of PERA provide:

(a) Public employers, their agents or representatives are prohibited from:

and capricious because there was no substantial and credible evidence establishing that the Commonwealth interfered with, restrained or coerced employees in the exercise of their rights under PERA or that the Commonwealth refused to bargain in good faith.

Again we must disagree. Our Supreme Court in *Franklin County Prison Board v. Pennsylvania Labor Relations Board,* 491 Pa. 50, 417 A.2d 1138 (1980), found that, where the relevant arbitration award was not merely advisory, the Prison Board had committed an unfair labor practice in violation of Section 1201 (a) (1) when it refused to implement that award. Similarly, the Commonwealth in this case refused to comply with an arbitration award and our earlier conclusion that said award was not merely advisory, *Association of Pennsylvania State College and University Faculties,* requires us to affirm the Board's finding that the Commonwealth's conduct here violated Section 1201 (a) (1).

Furthermore, as to Section 1201 (a) (5), the Board held that the Commonwealth did not meet its obligation to bargain in good faith because there was no appropriate legislative response to the arbitration award. This Court must give great deference to the experience and expertise of the Board when it has determined that an employer's conduct constituted a refusal to bargain in good faith, *Parents Union For Pub-*

(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act (footnote omitted).

. . . .

(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

*lic Schools in Philadelphia v. Board of Education of the School District of Philadelphia,* 480 Pa. 194, 389 A.2d 577 (1978), and our scope of review is limited to determining whether or not the Board's conclusions were reasonable or arbitrary, capricious or illegal. *Western Psychiatric Institute v. Pennsylvania Labor Relations Board,* 16 Pa. Commonwealth Ct. 275, 330 A.2d 262 (1974). The Commonwealth was obligated through the applicable collective bargaining agreement to lend its full support to any legislation necessary in order to implement this arbitration award[3] and the only activity in this regard was in the form of a letter to the chairmen of the Appropriations Committees of the General Assembly informing them of the existence of the award and of the Commonwealth's assertion that it could not be implemented because of Act 11-A. The record reveals no other action on the part of either the executive or legislative branches of the Commonwealth. We believe that it was reasonable for the Board to conclude that such inactivity by the Com-

---

[3] Article XXXIV of the collective bargaining agreement states:

A. In the event that any provision of this Agreement requires legislative action to become effective, including, but not limited to, amendment of existing statutes, the adoption of new legislation or the granting of appropriations, that provision shall become effective only if such legislative action is taken. The parties, however, mutually agree to make such recommendations to the Legislature which may be necessary to give force and effect to the provisions of this Agreement.

B. The COMMONWEALTH, with the cooperation of APSCUF, will cause to be introduced and will lend its full support to the necessary proposed legislation.

C. In the event the legislation is not passed with respect to a specific subject matter, the parties hereto shall have the right to re-negotiate regarding the subject matter contained in the appropriate article in a manner permitted by law.

monwealth could infringe upon the bargaining process and that the Board, in fulfilling its responsibility to "ensure even-handed, fair, and orderly collective bargaining," *Parents Union*, 480 Pa. at 197, 389 A.2d at 578, was neither arbitrary nor capricious when it found a violation of Section 1201(a)(5).

The Commonwealth finally asserts that the Board's order requiring "at least, a formal committee vote by the Appropriations Committee" violated the doctrine of separation of powers because the executive branch, as the public employer here, does not have the power to force the General Assembly to introduce or act upon specific legislation.

We must first note that the parties stipulated, and the Board so found, that the Commonwealth of Pennsylvania was the public employer in this case and was a party to the collective bargaining agreement. The Commonwealth does not dispute these findings, nor did it raise below the issue of whether or not the executive branch rather than the Commonwealth in general, was the public employer of the faculty members here concerned. We must, therefore, hold that the Board's order was a directive to the Commonwealth of Pennsylvania, not merely to the executive branch, to take specific action.

We must still determine whether or not the Board exceeded its authority in establishing a certain minimum level of legislative response which the General Assembly must undertake in considering this arbitration award. The Board has remedial power to ensure the enforcement of the policies and purposes of the Public Employees Relations Act, *Appeal of Cumberland Valley School District,* and we must affirm the Board's order if it is reasonable, if it is within its powers and if it is consistent with prior court decisions. *Id.* Section 1301 of PERA, 43 P.S. §1101.1301,

empowers the Board to "prevent any person from engaging in any unfair practice" and the term "person" is defined to include the Commonwealth. Section 301 (1) and (10) of PERA, 43 P.S. §§1101.301(1) and (10). Moreover, Section 1303 of PERA, 43 P.S. §1101.1303, provides that the Board may order "such person to cease and desist from such unfair practice, and to take such reasonable affirmative action, . . . as will effectuate the policies of this act." In light of the policies of PERA[4] and the legislature's consistent referral in PERA to the Commonwealth in general as a public employer, we do not believe that the General Assembly intended to exempt itself from the Board's authority to alleviate unfair labor practices. The Board itself correctly recognized that it may not order the Com-

---

[4] Section 101 of PERA, 43 P.S. §1101.101, provides:

The General Assembly of the Commonwealth of Pennsylvania declares that it is the public policy of this Commonwealth and the purpose of this act to promote orderly and constructive relationships between all public employers and their employes subject, however, to the paramount right of the citizens of this Commonwealth to keep inviolate the guarantees for their health, safety and welfare. Unresolved disputes between the public employer and its employes are injurious to the public and the General Assembly is therefore aware that adequate means must be established for minimizing them and providing for their resolution. Within the limitations imposed upon the governmental processes by these rights of the public at large and recognizing that harmonious relationships are required between the public employer and its employes, the General Assembly has determined that the overall policy may best be accomplished by (1) granting to public employes the right to organize and choose freely their representatives; (2) requiring public employers to negotiate and bargain with employe organizations representing public employes and to enter into written agreements evidencing the result of such bargaining; and (3) establishing procedures to provide for the protection of the rights of the public employe, the public employer and the public at large.

monwealth to fund the salary increases awarded here because the Pennsylvania Constitution provides that no monies shall be paid from the treasury, except by appropriation, Pa. Const. Art. III, §24, and it is the General Assembly that has exclusive authority to make such appropriations. Under *Franklin County*, however, our Supreme Court found that an arbitration award is binding upon a public employer until such time as it is shown that the legislative body responsible for providing the necessary funding has met, considered and rejected the award. In light of *Franklin County*, we believe that the Board's order requiring the Appropriations Committee at least to conduct a formal vote upon legislation implementing the arbitration award concerned here, was a reasonable exercise of the Board's remedial power. We will therefore affirm the Board's order.[5]

## Order

And Now, this 8th day of January, 1982, the order of the Pennsylvania Labor Relations Board in the above-captioned matter is affirmed.

This decision was reached prior to the expiration of the term of office of Judge Palladino.

---

[5] We would note that the Supreme Court in *Association of Pennsylvania State College and University Faculties*, commented in footnote 1a that the Pennsylvania Senate in April of 1981 rejected a bill to provide funds for the arbitration award in question. The record before us and the parties' briefs, however, contain no reference to such legislative action, and we will, therefore, not now consider its effect upon the present litigation.

We are also aware of the Supreme Court's statement in the case herein cited that an arbitration award is advisory as to the legislature, but we believe that this comment referred to the legislative discretion to appropriate funds, not to whether or not the legislature must take some minimum level of action in consideration of the arbitration award.