Commonwealth of Pennsylvania, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent. Council 13, American Federation of State, County and Municipal Employees, AFL-CIO, Intervenor.

420

Submitted on briefs September 15, 1983, to Judges MacPhail, Doyle and Barbieri, sitting as a panel of three.

*Frank A. Fisher, Jr.,* Assistant Counsel, with him *John D. Raup,* Chief Counsel, for petitioner.

*James L. Crawford,* with him *Frayda Kamber,* for respondent.

*Alaine S. Williams, Kirschner, Walters, Willig, Weinberg & Dempsey,* for intervenor.

Opinion by Judge MacPhail, November 18, 1983:

The Commonwealth of Pennsylvania, West Chester State College (Petitioner) seeks review of the final order by the Pennsylvania Labor Relations Board (Board), which determined that Petitioner committed an unfair labor practice, as defined by Section 1201(a)(5) of the Public Employe Relations Act (PERA),[1] by unilaterally invoking a twenty dollar ($20.00) parking fee on employees.

For a number of years, Petitioner encountered problems with traffic congestion and parking on the college campus. In November 1976, an All-College Parking Committee recommended that a fee be imposed on all members of the college community for the privilege of parking. After receiving various responses to this recommendation, including a letter from the American Federation of State, County and Municipal Employees (AFSCME) opposing the fee, the president of the college set forth a parking policy that effective September 1, 1978, all parking decals would be issued in accordance with the Parking Committee's recommended fee. On May 24, 1978, the Parking Committee unanimously approved a $20.00 parking fee.

From September 1977 until September 1978, labor-management meetings were held between management personnel and AFSMCE, at which time parking fees were discussed. AFSMCE was informed in these meetings that nothing definite had been decided about the parking fee. The question of parking fees was never a subject of negotiations in arriving at the collective bargaining agreement of August 24, 1978, effective July 1, 1978, between the Petitioner and AFSCME; and the agreement did not contain a reference to parking or parking fees.

---

[1] Act of July 23, 1970, P.L. 563, 43 P.S. §1101.1201(a)(5).

On December 4, 1978, AFSCME filed charges of unfair practice with the Board, alleging that Petitioner violated Sections 803, 1201(a)(5) and (9) of PERA. On January 28, 1980, the Board issued a nisi decision and order, and concluded that even though the subject of parking fees was a mandatory subject of bargaining, the existence of a "zipper clause" in the collective bargaining agreement waived the union's right to demand bargaining.[2] Timely exceptions were filed by the union.[3] The Board in its final order vacated its original conclusion to the contrary and concluded that Petitioner had violated Section 1201(a)(5) of PERA. It ordered the Petitioner to cease and desist from refusing to bargain and to bargain in good faith upon demand over the subject of the parking fee.

---

[2] The "zipper clause" is a term of the trade used to describe what is in fact a waiver subscribed to by both parties. In this instance, the agreement provides:

The Commonwealth and the Union acknowledge that this Agreement represents the results of collective negotiations between said parties conducted under and in accordance with the provisions of the Public Employe Relations Act and constitutes the entire agreement between the parties for the duration of the life of said Agreement; each party waiving the right to bargain collectively with each other with reference to any other subject, matter, issue, or thing whether specifically covered herein or wholly omitted herefrom and irrespective of whether said subject was mentioned or discussed during the negotiations preceding the execution of this Agreement.

[3] AFSCME's exceptions were as follows:

1. That the zipper clause discharged the employer from its statutory obligation to bargain collectively on the parking fee.

2. That the Board failed to adduce whether the parties contemplated the relinquishment of their right to bargain over unilateral imposition of the parking fee.

3. That the employer did not commit unfair practices under Section 1201(a)(5) and (9) of PERA.

4. That the employer did not violate Section 803 of PERA.

Our review is limited to determining whether or not the Board's conclusions were reasonable or arbitrary, capricious or illegal. *Commonwealth v. Pennsylvania Labor Relations Board,* 64 Pa. Commonwealth Ct. 84, 90, 438 A.2d 1061, 1064 (1982).

In its final order, the Board reversed its nisi decision and order based on a new zipper clause policy enunciated in *Commonwealth v. Pennsylvania Labor Relations Board,* 74 Pa. Commonwealth Ct. 1, 459 A.2d 452 (1983). This case held that zipper clauses could only be used as a ''shield by either party to prevent incessant demands during contract term,'' but that use of this clause as a ''sword by one seeking to impose unilateral changes without first bargaining is not favored.'' *Id.* at 11, 459 A.2d at 457. Since the wording of the zipper clause in this case was identical to the zipper clause in the case before the Board, the Board found that AFSCME did not make a conscious decision to surrender its right to bargain over the parking fee, and that it was the Petitioner's duty to place this mandatory subject of bargaining on the negotiation table.

Petitioner argues that the Board ignored and failed to give meaning to the negotiated language of the zipper clause, the past practice clause[4] and the management rights clause[5] of the collective bargaining

---

[4] The past practice clause states: ''Employe benefits and working conditions now existing and not in conflict with the Agreement shall remain in effect subject, however, to the right of the Employer to change these benefits or working conditions in the exercise of its management rights reserved to it under Article II of this Agreement.''

[5] The management rights clause states:

Matters of inherent managerial policy are reserved exclusively to the Employer. These include but shall not be limited to such areas of discretion or policy as the functions and programs of the Employer, standards of service, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel.

agreement. Petitioner also alleges that it is beyond the statutory authority of the Board to construe this negotiated language and determine that Petitioner has committed an unfair practice.

The Board has exclusive jurisdiction over charges of unfair labor practices,[6] and this Court has continuously given deference to the expertise of the Board in assessing the complexities of the facts.[7] Our review of the record indicates that AFSCME did not waive its right to bargain over the parking fee. While an AFSCME representative was on the Parking Committee which recommended the $20.00 parking fee, the record reveals that AFSCME never received any reports from the representative informing the union about the proposed parking fee. Although labor-management meetings were held between AFSCME and Petitioner's management personnel, the union was informed that nothing definite had been decided concerning parking fees. AFSCME received notification of the parking fee in early August 1978, and immediately notified Petitioner of its objection to the fee. These actions do not constitute waiver of a right to bargain over the parking fee. Since the Board found that the union's actions did not constitute waiver, and that a zipper clause by itself was insufficient to indicate a clear and conscious waiver by the union, we will defer to the expertise of the Board and hold that the Board acted reasonably in finding that Petitioner

---

[6] *Borough of New Cumberland v. Police Employees*, 51 Pa. Commonwealth Ct. 435, 439, 414 A.2d 761, 763 (1980).

[7] *Commonwealth v. Pennsylvania Labor Relations Board*, 74 Pa. Commonwealth Ct. 1, 12, 459 A.2d 452, 457 (1983) ; *Community College of Philadelphia v. Pennsylvania Labor Relations Board*, 60 Pa. Commonwealth Ct. 629, 639, 432 A.2d 637, 641-42, *aff'd*, 496 Pa. 415, 437 A.2d 942 (1982) ; *Warren Borough v. International Brotherhood of Electrical Workers, Local No. 1124*, 55 Pa. Commonwealth Ct. 570, 573, 423 A.2d 1117, 1118 (1980).

committed an unfair practice by unilaterally implementing a parking fee.[8]

Petitioner argues that the past practice clause preserves the right of Petitioner to change existing working conditions via its managerial rights and, therefore, Petitioner had the authority to change the past parking policy of no fee, to implementing a $20.00 parking fee. Relying on a past practice clause to make unilateral changes in matters which are not expressly included in a collective bargaining agreement is not a novel theory.[9] In a footnote to our decision in *Commonwealth v. Pennsylvania Labor Relations Board*, 74 Pa. Commonwealth Ct. 1, 459 A.2d 452 (1983), we noted that it would be "problematic in the extreme" for us to permit unilateral alterations in working conditions based on a past practice clause, while at the same time excusing the employer from bargaining over an issue not in the agreement based on the zipper clause.[10] We did not allow the petitioner to unilaterally change an issue which was not included in the collective bargaining agreement based on the past practice clause in that case, and we will not allow it in the case *sub judice*.

Petitioner further argues that under its management rights clause, the parking fee was an inherent managerial policy reserved exclusively for Petitioner. It is well established if the matter falls within the cate-

---

[8] Since the Board relied on *Commonwealth v. Pennsylvania Labor Relations Board*, 74 Pa. Commonwealth Ct. 1, 459 A.2d 452 (1983) to define what constitutes "waiver" of a bargaining right, we need not address Petitioner's argument that the Baord erroneously adopted a National Labor Relation Board's standard of waiver.

[9] In *Commonwealth v. Pennsylvania Labor Relations Board* 74 Pa. Commonwealth Ct. 1, 12, n. 4, 459 A.2d 452, 457 n. 4 (1983), the petitioner had an identical past practice clause, and we did not permit petitioner to rely on this clause as authority to unilaterally impose a ban on tobacco smoking by employees at their work stations.

[10] *Id.*

gory of "wages, hours and other terms and conditions of employment," then the matter is within the scope of mandatory bargaining. *Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 337 A.2d 262 (1975). The test of whether the matter is a condition of employment and a mandatory subject of bargaining, is to "weigh the employees' interest in the terms and conditions of their employment against the employer's legitimate interest in directing the overall scope and direction of the enterprise." *Commonwealth v. Pennsylvania Labor Relations Board,* 74 Pa. Commonwealth Ct. 1, 6, 459 A.2d 452, 454 (1983). If the matter is of a fundamental concern to the employees' conditions of employment, it is not removed as a matter subject to good faith bargaining simply because it may touch on basic policy. *Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 507, 337 A.2d 262, 266 (1975). The Board found that the parking fee had an impact on the conditions of employment in such a way that it outweighed the probable effect on the basic policy of the Petitioner in handling the parking and congestion problem. We agree with the Board that the subject of a parking fee is one of those subjects properly described as "conditions of employment." While the parking fee touches on Petitioner's new parking policy, the impact of unilaterally imposing a parking fee on the employees outweighs Petitioner's interest in effectuating such a policy. The parking fee was, therefore, a mandatory subject for bargaining.

We hereby affirm the decision of the Board because the Board's conclusions were reasonable and not arbitrary, capricious or illegal.

### ORDER

The final order and decision of the Pennsylvania Labor Relations Board, No. PERA-C-11, 992-E, dated January 21, 1982, is hereby affirmed.