## Walter Donnellan, Appellant *v.* Mt. Lebanon School District, Appellee.

34

Argued May 6, 1977, before Judges KRAMER, MENCER and ROGERS, sitting as a panel of three. Judge KRAMER did not participate in the decision.

*Shelley W. Elovitz,* with him *Ronald N. Watzman,* for appellant.

*Emil E. Narick,* with him *Anderson, Moreland & Bush,* for appellee.

OPINION BY JUDGE ROGERS, September 23, 1977:

The problem of this appeal is that of ascertaining the proper forum for the decision of a question concerning the period for the payment of the annual salary of a professional employe of a public school district who is a party to an individual written employment contract and who is also a member of a bargaining unit which has entered into a collective bargaining agreement with the employer. May the employe sue on his individual contract in the courts or is his exclusive remedy the arbitration procedures provided in the collective bargaining agreement? The appellant, Walter Donnellan, sued his employer, Mt. Lebanon School District, in the Court of Common Pleas of Allegheny County; and the school district contended that the matter was one exclusively for arbitration. The court below, on the school district's motion, entered summary judgment in favor of the school district and against Donnellan. Donnellan has appealed.

Donnellan's complaint in assumpsit said that his employer owed him $319.20, the interest on $2665 in annual salary which his employer, he says, should have paid him on or before June 30, 1974 but which it paid him after that date. His thesis is that his individual contract provides that his salary should be paid "during the school term or year"[1] and that the school term or year ended on June 30, 1974. The school district, whose practice has been to pay its professional employes in twelve equal installments over the period of twelve months beginning with September and ending in August, answers that the collective bargaining agreement with Donnellan's union provides a salary schedule for the school year 1973-1974 bearing the

---

[1] We note that the phrases "school term" and "school year" are defined in Section 102(3) & (4) of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §1-102(3) & (4).

legend "[t]his salary schedule shall commence on the first day teachers report for work for the 1973-1974 school year and shall continue throughout the school year," and that the meaning of and effect of this provision of the collective bargaining agreement must be submitted for arbitration as provided by the collective bargaining agreement and Section 903 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.903. Donnellan replies that the phrase in the collective bargaining agreement depended on by the school district was not intended to describe the period during which his annual salary must be paid; that the collective bargaining agreement is silent on this matter; and that he must be permitted to sue on his individual contract because that is the only remedy he has for the alleged late payments of salary.

We have concluded that the question for decision is one arguably dealt with by the salary provisions of the collective bargaining agreement, particularly the phrase hereinabove quoted, and that the arbitration provided by the collective bargaining agreement is the proper and only remedy presently available. Section 903 of PERA, 43 P.S. §1101.903, provides that "[a]rbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory." In the very recent case of *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty,* Pa. , 375 A.2d 1267, 1275 (1977), Justice POMEROY, writing for a plurality of the five participating Justices, wrote regarding the powers of labor contract arbitrators:

It has long been accepted in contract law that an ambiguous written instrument presents a question of fact for resolution by the finder-of-fact, whereas the meaning of an unambigu-

ous written instrument presents a 'question of law' for resolution by the court. As the authorities in the field of contracts make clear, however, the latter exercise is also in actuality a factual, not a legal, decision. For a variety of reasons the common law has long thought it best to leave to the court rather than to the jury the essentially factual question of what the contracting parties intended. This fact-finding function exercised by the court is denominated a 'question of law,' therefore, not because analytically it is a question of law but rather to indicate that it is the trial judge, not the jury, to whom the law assigns the responsibility for deciding the matter. All questions of interpretation of written instruments and agreements, in other words, are questions of fact, some in ordinary civil litigation resolved by the jury (ambiguous writings) and others resolved by the trial judge (unambiguous writings). [Citations omitted.]

In applying the 'n.o.v.' standard of review of 5 P.S. §171(d) [Section 11(d) of the Arbitration Act of 1927, Act of April 25, 1927, P.L. 381, *as amended*] ('award is against the law . . .') to arbitration awards, we must therefore analyze the role played by the arbitrator in interpreting collective bargaining agreements. From what we have just said, it is clear that the arbitrator in all cases in which the interpretation of the collective bargaining agreement is called for is deciding a factual question: what the parties intended. The division effected by the common law between ambiguous writings (interpreted by the jury) and unambiguous writings (interpreted by the court as a 'question of law') is logically inapplicable to inter-

pretation questions which arise in arbitration. The policy considerations which compelled the common law to make the division (jury illiteracy, lack of respect for writings, etc.) are absent in the arbitration forum. *A fortiori is this true under a statute such as PERA, which mandates arbitration as the exclusive means of interpreting collective bargaining agreements in the first instance. See 43 P.S. §1101.903.* (Emphasis added.)

If all questions of the interpretation of collective bargining agreements are questions of fact to be decided by arbitrators, it follows that a disputed question of whether the agreement deals with a particular subject must also be decided by arbitrators. We therefore conclude that the court below properly entered summary judgment against Donnellan.

It is possible that the arbitrator in this case might decide, based on the wording of the agreement and the circumstances surrounding its execution, that nothing in the agreement was intended to fix the period for the payment of salary. If this is the final result of the arbitration proceedings, Donnellan should be able to sue on his individual contract; and against this eventuality we will modify the judgment entered below so that it may be without prejudice to Donnellan's right to sue on his individual contract in such case.

Two other matters deserve brief mention. Donnellan contends that the case of *U.S. Bulk Carriers v. Arguelles,* 400 U.S. 351 (1971), establishes as a matter of federal labor law the principle that the presence of arbitration procedures in a collective bargaining agreement does not abrogate a statutory remedy to sue for wages in a federal court. It follows, he says, since his individual contract was in the form required by Section 1121 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S.

§11-1121, that he may assert his claim based on this contract in the state courts. The argument fails on a distinction. The federal wages statute under considertaion in *U.S. Bulk Carriers v. Arguelles, supra,* specified that a penalty for nonpayment of certain minimum wages was recoverable "before the court." The United States Supreme Court concluded that the phrase "before the court" implied "a right to make the claim to the court and not a duty to make it before a grievance committee or before an arbitrator." 400 U.S. at 354.

The general federal rule is that complaints concerning matters which have been the subject of collective bargaining culminating in a collective bargaining agreement must be pursued by the grievance and arbitration procedures provided by the contract. *Republic Steel Corp. v. Maddox,* 379 U.S. 650 (1965). The Supreme Court of Pennsylvania has held that by reason of Section 903 of PERA, this State's policy in favor of arbitration in the public sector is stronger than federal policy in the private. *Board of Education v. Philadelphia Federation of Teachers Local No. 3,* 464 Pa. 92, 346 A.2d 35 (1975). Moreover, in the very recent case of *Rylke v. Portage Area School District,* Pa. , 375 A.2d 692 (1977), the Supreme Court held that the incorporation in a collective bargaining agreement of provisions of the Public School Code of 1949 required the submission to arbitration of a question of whether the provisions of the School Code had been followed by the employer.

We conclude that Donnellan's contention that he is owed interest on assertedly improperly deferred payments of salary must be submitted to grievance and arbitration under the collective bargaining agreement and that this remedy is for the present exclusive. We recognize that affidavits of union representatives in the record declare that salary payment periods were

not a subject of collective bargaining and assert the affiant's belief that the collective bargaining agreement does not speak on this subject. The school district obviously disagrees with these contentions; and thus the issue for arbitration is formed.

We note that the collective bargaining agreement provides that grievances shall be deemed waived unless submitted within 40 days "after the aggrieved party knew or should have known of the events or conditions on which it is based." The unusual circumstances of this case, including the fact that we have relied heavily on decisions of the Pennsylvania Supreme Court filed long after the proceedings were concluded in the court below, impel us to suggest that a reasonable interpretation of the waiver provision just mentioned would be that a grievance submitted within 40 days after a final conclusion of this case is timely.

The order of the court below entering summary judgment in favor of the appellee, Mt. Lebanon School District, is modified by providing that it shall be without prejudice to the right of the appellant, Walter Donnellan, to sue on his individual contract with the appellee school district if the final resolution of grievance and arbitration proceedings is a decision that the collective bargaining agreement is silent on the matter of salary payment periods; and the judgment below so modified is affirmed.

Judge KRAMER did not participate in the decision in this case. *See* Pa. R.A.P. 3102(d).

ORDER

·AND Now, this 23rd day of September, 1977, the order of the court below entering summary judgment in favor of the appellee, Mt. Lebanon School District, is modified by providing that it shall be without prejudice to the right of the appellant, Walter Donnellan,

to sue on his individual contract with the appellee school district if the final resolution of grievance and arbitration proceedings is a decision that the collective bargaining agreement is silent on the matter of salary payment periods; and the judgment below so modified is affirmed.