Robert W. Bailey et al., Appellants *v.* Ferndale Area School District, Appellee.

Argued October 4, 1982, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*William K. Eckel,* for appellants.

*J. Phillip Saylor,* with him *Robert S. Brierton, Spence, Custer, Saylor, Wolfe & Rose,* for appellee.

OPINION BY JUDGE ROGERS, December 29, 1982:

The plaintiffs, professional employees of the Ferndale Area School District, appeal from an order of the Court of Common Pleas of Cambria County sustaining the jurisdictional preliminary objection of the school district to the plaintiffs' complaint in assumpsit.

The complaint, in fifty-three counts corresponding to the number of named professional employees initially involved,[1] purports to state a cause of action under the Wage Payment and Collection Law, Act of July 14, 1961, P.L. 637, 43 P.S. 260.1 *et seq.* The principal averments are that the terms and conditions of the plaintiffs' employment with the school district were the subject of a collective bargaining agreement which expired on August 31, 1979; that the plaintiffs thereafer continued to perform their duties for the school district from September 4, 1979 until January 4, 1980; that the plaintiffs then commenced a lawful strike which was in progress on the date of the filing of the complaint;[2] that the practice of the school district in previous years had been to pay each of the plaintiffs an amount equal to 1/26th of the appropriate annual salary on each of twenty-six bi-weekly pay-

[1] Six of the plaintiffs remain in this appeal, the others having withdrawn.

[2] We were informed at oral argument that the strike has since been settled and that all wages due to these employees have been paid and that any present interest in prosecuting this cause is limited to those provisions of the Wage Payment and Collection Law, providing for the recovery by successful plaintiffs of liquidated damages and attorney's fees.

days; that this practice was continued during the first four months of the 1979-1980 school year with payments made to each of the plaintiffs on two dates in September, two dates in October, two dates in November, and two dates in December, 1979, and on January 2, 1980; and that on January 16, 1980 the following memorandum and accompanying paycheck were received by each of the plaintiffs. The memorandum appears under the signature of the president of the Ferndale Area School Board:

Enclosed please find your payroll check dated January 16, 1980. The check is 8/14th of your normal wages per past practice for the pay period of December 27, 1979 through January 9, 1980. This amount has been determined because Section 1006 of Act 195, 43 P.S. 1101.1006 provides that "No public employee shall be entitled to pay or compensation from the public employer for the period engaged in any strike". Those performing extra-curricular duties on a full-time basis will be paid as per past practice.

In addition to the averments summarized above, the complaint sets forth detailed arithmetic calculations from which may be derived, it is alleged, an amount of money "due at the time of filing this complaint" from the school district to each of the named plaintiffs. Although the conceptual underpinnings of these calculations is never explained and is not the subject of explanation in the briefs submitted by either party, it would appear that the amount asserted to be "due" represents the difference between the amount actually paid by the school district to each of the plaintiffs and the amount that would have. been paid if the whole of the annual salary was to be distributed during the school year instead of being distributed in even amounts on each of twenty-six biweekly paydays. In other words, the plaintiffs assert

that on January 4, 1980, they had worked nearly half of the school year but had received only slightly more than one-third of the annual salary; which shortfall was a consequence of the fact that work was to be performed on a nine month basis while the salary was to be received on a twelve month basis.

The complaint concludes with citation to Section 5(b) of the Wage Payment and Collection Law, 43 P.S. §260.5(b) which is as follows:

> In the event of the suspension of work as the result of an industrial dispute, the wages and compensation earned and unpaid at the time of said suspension shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable....

Exhibits attached as appendices to the complaint include a copy of the expired collective bargaining agreement and copies of a temporary professional employee contract and of a professional employee contract entered into by the school district and two of the plaintiffs. On the issue of the schedule by which the annual salary is to be paid, the collective bargaining agreement provides only that "paydays will be scheduled once every two weeks." The individual employment contracts state, as is authorized by Section 1121 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1121, that the annual salary shall be "payable monthly or semimonthly during the school term or year."

It is far from clear that these allegations make out a cause of action cognizable under the Wage Payment and Collection Law because that statute requires in the case of the suspension of work as the result of an industrial dispute only that compensation then earned but unpaid shall be due and payable "not later than the next regular payday . . . on which such wages

would *otherwise* be due and payable . . ." (Emphasis added.) Nowhere in the complaint or its accompanying exhibits is it alleged in other than a conclusory fashion that the compensation claimed would have been due and payable in January, 1980, in the absence of the strike. On the contrary, the clear implication from the averments is that the compensation claimed would not *otherwise* have been due and payable until sometime during the summer months of 1980. However, the school district's preliminary objection to the complaint in the nature of a demurrer was overruled and there has been no cross appeal from that decision of the trial court. Therefore, we are precluded at this time from resolving the issue of the substantive sufficiency of the complaint.

The trial court decided that it was without jurisdiction in this matter, holding that the conduct of the school district described in the complaint was arguably an unfair labor practice within the exclusive original jurisdiction of the Pennsylvania Labor Relations Board (PLRB). *See* Section 1301 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. §1101.1301, which provides that:

> The [PLRB] is empowered . . . to prevent any person from engaging in any unfair practice listed in Article XII of this act. This power shall be exclusive and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise.

The appellants argue that no unfair labor practice is here at issue because the complaint does not characterize the conduct of the school district as an unfair labor practice and because the complaint does not contain allegations of anti-union animus. Of course, this is not the test which, instead, was correctly stated

by the trial court and is: "[i]f a party directly seeks redress of conduct which arguably constitutes one of the unfair labor practices listed in Article XII (Section 1201) of the PERA, 43 P.S. §1101.1201 . . . , jurisdiction to determine whether an unfair labor practice has indeed occurred and, if so, to prevent a party from continuing the practice is in the Pennsylvania Labor Relations Board and nowhere else." *Hollinger v. Department of Public Welfare,* 469 Pa. 358, 366, 365 A.2d 1245, 1250 (1976).[3]

Although, as we have indicated, it is unclear precisely what legal wrong the plaintiffs sought to redress, we believe that if any cause of action is stated it is that the school district unlawfully withheld accrued wages or other compensation from striking professional employees. This conduct is, in our judg-

---

[3] The appellants also refer to authorities assertedly standing for the proposition that the judicial forum is available with respect to breach of contract claims even in those instances where the contractual breach is also, arguably, an unfair labor practice. This issue is not before us since, as the appellants concede in their brief, the complaint does not, by its terms, seek to enforce any right created either by individual employment contract or by the expired collective bargaining agreement.

Moreover, if a contractual obligation were here at issue the exclusive remedial forum would be arbitral and not judicial. *See* Section 903 of PERA, 43 P.S. §1101.903 providing that "[a]rbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory." The case of *Donnellan v. Mt. Lebanon School District,* 32 Pa. Commonwealth Ct. 33, 377 A.2d 1054 (1977) involving a suit in assumpsit by a teacher for interest assertedly due on that portion of his annual salary remaining unpaid on the last day of the nine month school term and holding that the teacher's exclusive remedy is pursuant to the grievance and arbitration procedures contained in the collective bargaining agreement, is directly controlling on this issue. *See also Nolde Brothers, Inc. v. Bakery Workers,* 430 U.S. 243 (1977) (dispute arising from the interpretation of a collective bargaining agreement is within the scope of the contractual grievance and arbitration provision even after the contract has expired).

ment, arguably an unfair labor practice within the meaning of PERA, Section 1201(a)(1), 43 P.S. §1101.-1201(a)(1) which prohibits public employers from "[i]nterfering, restraining or coercing employees in the exercise of rights guaranteed in Article IV of this act [including the right to strike]." No authority brought to our attention by either of the parties is directly dispositive of the issue but many cases tend toward this result. For example, in *Appeal of Cumberland Valley School District,* 483 Pa. 134, 394 A.2d 946 (1978), it was held that a school district's discontinuance of fringe benefits after the expiration of a collective bargaining agreement and during the course of negotiations constitutes an unfair labor practice. More directly applicable is *National Labor Relations Board v. Great Dane Trailers, Inc.,* 388 U.S. 26 (1967) where the withholding of accrued vacation benefits from lawful strikers, while announcing an intention to pay such benefits to non-strikers, was held to be an unfair labor practice within the meaning of those

---

In *Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728 (1981), concerning whether an employee may bring an action in federal district court alleging a violation of the Fair Labor Standards Act after having unsuccessfully submitted the underlying wage dispute to a joint grievance committee pursuant to the applicable collective bargaining agreement, the Court held that the provisions and policies of the NLRA do not require the exclusivity of the arbitral forum. The appellants' reliance on *Barrentine* is misplaced since this state's policy in favor of arbitration in the public sector is without parallel in federal decisions concerning private sector bargaining. *Board of Education v. Philadelphia Federation of Teachers Local No. 3,* 464 Pa. 92, 346 A.2d 35 (1975); *Donnellan* at 39, 377 A.2d at 1057.

Other authorities relied on by the appellants including *Rylke v. Portage Area School District,* 473 Pa. 481, 375 A.2d 692 (1977) and *Robinson v. Abington Education Association,* 492 Pa. 218, 423 A.2d 1014 (1980) are inapposite. Both of these cases concerned the substantive validity of contested collective bargaining agreement provisions. As we have indicated, no such provision is here at issue.

provisions of the National Relations Act (NLRA) which prohibit interference with and restraint of collective activities and which prohibit discrimination discouraging collective activity. Such subsequent cases as *National Labor Relations Board v. Jemco, Inc.*, 465 F.2d 1148 (6th Cir. 1972) *cert. denied*, 409 U.S. 1109 (1973) and *Allied Industrial Workers v. National Labor Relations Board*, 155 U.S. App. D.C. 112, 476 F.2d 868 (1973) make it clear that the rule of *Great Dane Trailers, Inc.* does not depend on the disparate treatment of strikers and non-strikers and is applicable in those cases where an employer, on the occasion of a lawful strike, withholds accrued benefits from all employees.

In *System Council T-4 v. National Labor Relations Board*, 446 F.2d 815 (7th Cir. 1971) *cert. denied*, 404 U.S. 1059 (1972), the Court wrote:

> [A] category of benefits an employer may not deny consists of any rights earned by an employee before the strike began. Withholding accrued benefits from strikers is conduct "inherently destructive" of employee rights and is an unfair labor practice unless the employer can prove a legitimate business purpose.

*Id.* at 819. *See also National Labor Relations Board v. General Time Corp.*, 650 F.2d 872 (7th Cir. 1981) (deferring payment of vacation pay to striking employees is an unfair labor practice); *National Labor Relations Board v. Knuth Brothers, Inc.*, 584 F.2d 813 (7th Cir. 1978) (denial of accrued vacation benefits to striking employees is an unfair labor practice); *E. L. Wiegand Division v. National Labor Relations Board*, 650 F.2d 463, 468 (3rd Cir. 1981), *cert. denied*, 102 S.Ct. 1429 (1982), (authorities collected) (a refusal to pay accrued sickness and accident benefits to disabled employees following commencement of a lawful strike is an unfair labor practice even in the absence

of disparate treatment of strikers and non-strikers); *National Labor Relations Board v. Dothan Eagle, Inc.*, 434 F.2d 93 (5th Cir. 1970) (denial of salary increase for engaging in protected activity is an unfair labor practice); *Berry Schools v. National Labor Relations Board*, 653 F.2d 966 (5th Cir. 1981) (same).

Paragraph 16 of the complaint avers in part that "each plaintiff's claim is only for earnings due for services rendered prior to the strike" thereby making it clear that the plaintiffs sought to recover accrued and not prospective compensation allegedly withheld by the school district on the occasion of the strike.

Therefore, the Court of Common Pleas of Cambria County correctly held that the complaint arguably seeks redress of the conduct constituting an unfair labor practice and, therefore, should properly have been before the Pennsylvania Labor Relations Board.

Order affirmed.

ORDER

AND Now, this 29th day of December, 1982, the order of the Court of Common Pleas of Cambria County in the above-captioned matter is affirmed.