508 A.2d 365

Woodland Hills Education Association, PSEA/ NEA, Appellant *v.* Woodland Hills School District, Appellee.

Woodland Hills School District, Appellant *v.* Woodland Hills Education Association, PSEA/ NEA, Appellee.

Argued March 10, 1986, before President Judge CRUMLISH, JR., Judges ROGERS and BARRY, sitting as a panel of three.

*Ronald N. Watzman*, for appellant/appellee, Woodland Hills Education Association, PSEA/NEA.

*Patrick J. Clair*, with him, *Thomas M. Rutter, Jr., Goehring, Rutter & Boehm*, for appellee/appellant, Woodland Hills School District.

OPINION BY JUDGE BARRY, April 23, 1986:

Both parties to this litigation, the Woodland Hills School District (District), the plaintiff below, and the Woodland Hills Education Association (Association) appeal from an order of the Court of Common Pleas of Allegheny County which entered judgment for the District in the amount of $12,033.22.

The Association, which represents most of the teachers within the District, staged a work stoppage between September 20, 1982 and October 28, 1982, a period of thirty-seven days. In spite of the work stoppage, the District was able to schedule 180 days of student instruction and, therefore, obtained its full state subsidy. The teachers, however, worked only 183 days as opposed to the 186 days called for in the contract. As a result, the teachers were paid 183/186 of their annual salaries.

Fringe benefits covering the teachers included medical, dental, vision and life insurance. These coverages were provided on an annual basis, though the premiums were paid by the District every month. The premiums were paid during the strike by the District. Who must ultimately bear these costs during the work stoppage and in what amount constitutes the hub of the present controversy.

Following the signing of the new contract and the return to work of the teachers, the District filed an action for declaratory judgment, seeking reimbursement for the District's payments made for the fringe benefits covering the teachers during the strike. The parties entered into a stipulation thereby obviating the need for any hearings. In the stipulation, the parties agreed that the issue of whether the Association should be required to repay anything would hinge upon an interpretation of Section 1006 of the Public Employe Relation Act (PERA), Act of July 23, 1970, P.L. 563, 43 P.S. §1101.1006 (Supp. 1985). The District sought repayment of $74,873.38, or 37/365 of the total annual premiums covering the entire period of the work stoppage. In the stipulation, the Association stated that if it was responsible for repayment, the amount due should be $12,033.22, or 3/186 of the annual premiums. The trial court held that the Association was, in fact, respon-

sible for repaying the latter amount. Both parties appealed and the matter is now ready for our review.

Section 1006 of PERA provides, "No public employe shall be entitled to pay or compensation from the public employer for the period engaged in any strike." 43 P.S. §1101.1006 (Supp. 1985). The Association first advances two arguments, both of which challenge the trial court's holding that the Association was responsible for repayment to the District. It first argues that no repayment is necessary because the District made these payments gratuitously. As mere volunteers generally do not have any claims for restitution, *Martin v. Little, Brown and Co.*, 304 Pa. Superior Ct. 424, 450 A.2d 984 (1981), the Association believes no repayment is necessary.

Following the District's filing of this action for declaratory judgment, the Association, by way of answer on March 29, 1983, raised the issue of gratuitous payments by the District. In June of 1984, however, attorneys for both parties signed a stipulation, one portion of which read, "[P]laintiff and Defendant agree that the issue of whether the Bargaining Unit should be required to repay any premiums depends upon the interpretation of Section 1006 of Act 195. . . ." The stipulation makes no mention of any factual controversy concerning gratuitous payments by the District. Further, the trial court never addressed this issue in its opinion. We, therefore, find the Association's classification of these payments by the District as gratuitous to have no support from this record.

The Association also argues that these premiums, which provided the employees with fringe benefits, do not constitute compensation. Section 301(d) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7301(d) (Supp. 1985), specifically excludes from its definition of compensation payments by employers for these types of fringe benefits. Because

PERA has no definition of compensation, the Association argues that the Tax Reform Code's definition should control. We believe this argument must be rejected out of hand. That an employee is not required to pay income tax on payments for fringe benefits can in no way be taken to mean that for purposes of a PERA anaylsis, such payments do not constitute compensation. As these payments clearly constitute a part of the total pay package of the employees, we believe they are compensation as that term is used in Section 1006.

The Association advances two other arguments in its brief. First, it argues that the trial court's award of $12,033.22 was improper because a portion of that amount represents payments for teachers who were not members of the Association. However, in the stipulation, the Association provided that if it was, indeed, responsible for repayment, it would owe 3/186 of the total annual premiums, of $12,033.22. Because of the stipulation, the Association will not be heard to complain when the trial court entered judgment in this exact amount.[1]

Finally, the Association argues that it was improper to enter judgment on the present complaint when that complaint asked only for an interpretation of Section 1006 and did not ask for damages. However, at oral argument, the Association informed this Court that it was abandoning this argument. Accordingly, we need not consider it.

The District advances an argument in support of reversing the trial court's order. The District believes that the amount to be repaid should be calculated on a calendar day basis, or 37/365 of the total annual premiums rather than on an instructional day basis, or

---

[1] We do not mean to imply that the Association has no right to argue in this Court that it is bound to accept the decision of the trial court awarding 3/186 of the total premium to the District. The stipulation affects only the amount if due at all.

3/186 of the total annual premiums. While advancing a number of reasons for its position, we must reject the argument for one reason. As mentioned before, payments of insurance premiums for fringe benefits constitute compensation under Section 1006. These benefits are in effect for the whole year, despite the fact the employees must work only 186 days to earn them. Since the employees worked only 183 days they are entitled only to payment of 183/186 of their total pay package. The trial court's order represents a refusal to accept the District's reasoning. Finding no error, we affirm.

ORDER IN 2694 C.D. 1984

Now, April 23, 1986, the order of the Court of Common Pleas of Allegheny County, dated August 9, 1984, at No. GD 83-05095, is affirmed.

ORDER IN 2695 C.D. 1984

Now, April 23, 1986, the order of the Court of Common Pleas of Allegheny County, dated August 9, 1984, at No. GD-83-05095, is affirmed.