633 A.2d 220

**PHILIPSBURG–OSCEOLA EDUCATION ASSOCIATION,
by G. David PORTER, Trustee Ad Litem**

v.

**PHILIPSBURG–OSCEOLA AREA SCHOOL
DISTRICT, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 14, 1993.

Decided Oct. 15, 1993.

As Amended Nov. 18, 1993.

Winifred H. Jones–Wenger, for appellant.

William A. Hebe, for appellee.

Before PALLADINO and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Philipsburg–Osceola Area School District (School District), appellant in this case, appeals the grant of a preliminary injunction by the Court of Common Pleas of Centre County. The common pleas court issued four orders in this case. The first order denied the School District's preliminary objections to the complaint of Philipsburg–Osceola Education Association (Association). The second order granted the Association's motion for a preliminary injunction. The third order denied the School District's motion to dissolve the preliminary injunction. The fourth order required the Association to file a $5,000.00 bond.

The parties were signatories to a collective bargaining agreement which expired on August 31, 1991. The Association engaged in selective strikes from October 28, 1991 through November 1, 1991 and from November 15, 1991 through January 23, 1992. The School District deducted sums of money from the Association members' paychecks for each day of selective strike. The School District notified the Association members that this action was being taken pursuant to Section 1006 of the Public Employe Relations Act (PERA),[1] 43 P.S. § 1101.1006, which provides that "[n]o public employe shall be entitled to pay or compensation from the public employer for the period engaged in any strike."

The Association filed a complaint in equity with the common pleas court on or about December 3, 1991. In paragraph seventeen of its complaint, the Association averred that "the action of the School District in deducting monies from Association's bargaining unit members' paychecks is intended to coerce and intimidate professional employees in the exercise of their rights to bargain and strike guaranteed to them under Act 195 [PERA]." The Association also averred that the School District's action was a violation of the Pennsylvania Wage Payment and Collection Law (Wage Law).[2] Section 5(b) of the Wage Law provides in relevant part:

1. Act of July 23, 1970, P.L. 563, No. 195, *as amended,* 43 P.S. §§ 1101.-101–1101.2301.

2. Act of July 14, 1961, P.L. 637, *as amended,* 43 P.S. §§ 260.1–260.45.

(b) Industrial Disputes. In the event of the suspension of work as the result of an industrial dispute, the wages and compensation earned and unpaid at the time of said suspension shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable....

43 P.S. § 260.5(b).

The Association requested a preliminary injunction directing the School District to fully compensate members of the bargaining unit. The School District filed preliminary objections in the nature of a demurrer, four motions to dismiss and a petition to dismiss.

A hearing was held before the trial judge at which the sole witness was the School District's business manager. He testified that Association members were being paid the same annual salary as they had been paid under the expired collective bargaining agreement. Annual salaries are paid, as they have been for many years, in twenty-four equal installments, on the fifteenth and thirtieth day of every month. Therefore, a bimonthly paycheck does not reflect the actual days worked during the pay period; if, for instance, during the school year a teacher worked 10 days in one pay period, or approximately one eighteenth of the 181–day school year, he or she was paid only one twenty-fourth of his or her salary.[3] As of November 15, 1991, Association members had worked 53 days of the 1991–1992 school year but were paid for 34 days.

The School District's witness also testified that the School District calculates a per diem pay rate for Association members. This per diem rate is arrived at by dividing a member's annual salary by 181 days. The witness testified that based on past practice the per diem rate would be subtracted from the gross bimonthly paycheck for each unauthorized day a member did not work during that pay period.[4] Thus, the

3. Of course, during a summer pay period a teacher would presumably work no days while still receiving a check for one twenty-fourth of his or her annual salary.

4. Testimony also established that if the members ended up working 181 days they would receive their full salaries, the deducted days being paid

School District deducted amounts equalling four per diems from paychecks issued on November 15, 1991, reflecting the four strike days of October 28 through October 30, 1991. On December 15, 1991, no paychecks were issued because the members were on strike during the entire pay period.

The trial court denied the School District's preliminary objections and granted the preliminary injunction. The court ordered that the "School District shall pay Plaintiff [Association] in full for work performed to date. Defendant [School District] shall continue to pay Plaintiff in full for work performed until such time as the selective strike results in days paid being equivalent to or greater than days worked." *Philipsburg–Osceola Education Association v. Philipsburg–Osceola Area School District* (No. 1991–3298, filed December 31, 1991), slip op. at 3.

■ The trial court subsequently heard the School District's motion to dissolve the preliminary injunction and request for a bond in the amount of $387,821.00. The trial court denied the School District's motion and fixed bond in the amount of $5,000.00. The School District now appeals to this Court.[5]

back in some as yet undetermined manner. If a member worked more than 181 days, he or she would have an amount equal to the per diem rate added to his or her bimonthly paycheck.

5. We note that there is a strong possibility that this case is moot. After the School District filed its appeal with this Court, the Association requested and was granted by the trial court an order removing the School District's automatic supersedeas on January 31, 1992. This Court then denied the School District's request for a supersedeas on February 13, 1992. We would assume, therefore, that the School District complied with the injunction. These occurrences, coupled with the aforementioned testimony before the trial judge establishing that Association members would receive their full annual pay if they ended up working 181 days in the 1991–1992 school year, would seem to render this appeal moot.

However, neither party has raised the issue of mootness and we did not have the opportunity to present the issue to them; although this case was originally to be heard at oral argument, the parties chose instead to submit it on briefs.

Irrespective of whether this case is technically moot, however, we believe that the substantive question involved is capable of repetition— *see, e.g., Bailey v. Ferndale Area School District*, 70 Pa.Commonwealth

■ The School District first contends that the trial court erred because a school district is not defined as an "employer" under the Wage Law. We agree with the School District that the trial court should not have relied on *Bailey v. Ferndale Area School District*, 70 Pa.Commonwealth Ct. 628, 454 A.2d 207 (1982) for its Wage Law analysis. In that case, we specifically held that we were precluded from resolving the Wage Law issue. We also agree that a proper analysis should have included *Huffman v. Borough of Millvale*, 139 Pa.Commonwealth Ct. 349, 591 A.2d 1137 (1991), where we held that the term "employer" under the Wage Law does not include municipal corporations.

"Employer" is defined in the Wage Law as including "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. § 260.2a. We looked at this provision in *Huffman* and found it did not include municipal corporations; therefore, we declined to supply an omission in the statute and expand the definition of employer. We wrote in *Huffman* that "[t]here is a clear distinction between municipal and private corporations and, if the legislature wished that municipal corporations be covered by the [Wage] Law, it could have easily included them." *Id.* at 352, 591 A.2d at 1139.

Our analysis in *Huffman* is equally applicable to the case here. The Association argues that school districts are statutorily created "bodies corporate" pursuant to Section 211 of the Public School Code of 1949,[6] 24 P.S. § 2-211. However, our decision in *Huffman* leads us to perceive an equally clear distinction between school districts and private corporations.

Ct. 628, 454 A.2d 207 (1982), where the employee association and the school district followed practices similar to those of this case—but likely to evade review, and therefore we will proceed to review the case. *Wilkes–Barre Area Education Association v. Wilkes–Barre Area School District*, 105 Pa.Commonwealth Ct. 165, 523 A.2d 1183, *petition for allowance of appeal denied*, 516 Pa. 645, 533 A.2d 715 (1987).

6. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27-2702.

The legislature could have easily included municipal corporations or, for that matter, school districts under its definition of employer, but it did not. We therefore decline to extend the Wage Law to school district employers.

■ The School District next argues that the trial court lacked jurisdiction because Section 903 of PERA, 43 P.S. § 1101.903, mandates the submission to arbitration of the dispute at issue. The trial court seemed to acknowledge the accuracy of this argument in its decision on preliminary objections; however, the court found that a protracted grievance procedure would not afford the Association an adequate and complete remedy to the immediate and continuing nature of the economic injuries alleged, citing *Hill v. Nationwide Insurance Co.*, 391 Pa.Superior Ct. 184, 570 A.2d 574, *petition for allowance of appeal denied*, 525 Pa. 647, 581 A.2d 573 (1990).

We find *Hill* to be inapplicable. That case involved a person injured in an automobile accident and the Superior Court's interpretation of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. § 1716. Equitable jurisdiction was invoked there upon a finding that the MVFRL did not provide an adequate and complete statutory remedy. This case, by contrast, involves Section 903 of PERA, which provides in relevant part that "[a]rbitration of disputes or grievances arising out of the interpretation of the provision of a collective bargaining agreement is *mandatory.*" 43 P.S. § 1101.903 (emphasis added). Moreover, although the Association now argues the need for equity to cut off protracted grievance procedures, the School District correctly notes that there is no evidence of record to support the trial court's characterization of the grievance procedure.

The Association argues in the alternative that there is no provision of the expired collective bargaining agreement under which the pay dispute could be grieved and arbitrated.[7] How-

7. The parties do not dispute that the grievance procedure of the expired contract remained in effect.

ever, this is contrary to what the Association averred in its complaint:

14. Plaintiff believes and, therefore, avers that under the terms of the last bilaterally agreed-upon collective bargaining agreement, Association's bargaining unit members are entitled to full pay unless and until days paid is equal to or greater than days worked.

Moreover, the School District points to portions of Article III of the collective bargaining agreement, which provide:

*Definition:* A grievance is a charge that a condition of the contract has been violated or that a board policy, which affects the conditions or circumstances under which a teacher works, has been inequitably applied.

.        .        .        .        .

*Step 5:* Disputes or grievances arising out of the interpretation of the provisions of this agreement which have not been satisfactorily resolved in the foregoing step may be submitted to arbitration as provided in Section 903 of Act 195 [PERA]. . . .

In light of the Association's own averment and the language of the collective bargaining agreement, we reject the Association's argument that there was no grievable issue under the agreement. In view of the mandate of section 903, we must also reject the trial court's rationale for holding that the Association was not required to exhaust the grievance and arbitration process.

Furthermore, we agree with the School District's argument that the trial court lacked jurisdiction over this claim because it is arguably an unfair labor practice and Section 1301 of PERA, 43 P.S. § 1101.1301, grants exclusive jurisdiction for such a dispute to the Pennsylvania Labor Relations Board (PLRB). Our substantive holding in *Bailey* is dispositive. There, as in the case before us, the school district deducted pay from employee salaries for strike days, pursuant to Section 1006 of PERA. Similar to this case again, the employees filed a complaint alleging they had worked nearly half of the school year but had received only about one-third of their pay.

The employees sought relief under the Wage Law and requested a preliminary injunction. After concluding that the Wage Law issue was not before us, we held that the complaint arguably sought redress of an unfair labor practice and should properly have been before the PLRB. *Id.,* 70 Pa.Commonwealth Ct. at 632–636, 454 A.2d at 209–211. We therefore concluded that the trial court correctly sustained preliminary objections to the preliminary injunction request.

■ The Association does not dispute the PLRB's jurisdiction. Instead, it relies on the fact that it *did* file an unfair labor charge with the PLRB. The PLRB Secretary considered that charge in a letter dated December 5, 1991. The Secretary ruled that, due to Section 1006 of PERA, the School District had not committed an unfair labor practice; she therefore refused to issue a complaint. Because of this decision, the Association argues, the trial court could exercise equitable jurisdiction. We disagree. First, the Secretary's decision is dated after the date on which the Association filed its action. Second, and more importantly, the matter did not end with the Secretary's decision. The decision included a statement that "[a]ny exceptions to this decision not to issue a complaint may be filed with the Board.... Exceptions are not required to be served on respondent...." The record does not show whether the Association filed exceptions, though it may in fact have done so. In any event, the Association had the right to take exceptions before the PLRB and, of course, had the additional avenue of appeal for judicial review of a PLRB decision.

Paragraph seventeen of the Association's complaint, set out above, in which the Association alleges employer coercion and intimidation of employees in the exercise of their rights under PERA, is a classic allegation of an unfair labor practice and a matter for the PLRB. The PLRB's jurisdiction is clearly exclusive under section 1301. We cannot agree that an adverse ruling by the PLRB Secretary divests the PLRB of its exclusive jurisdiction or invests jurisdiction in another forum. Nor does the existence of that ruling limit our holding in *Bailey.*

The trial judge was understandably concerned for the students who were the innocent victims of what he described as the "firmly entrenched" positions of the parties and the delays that would be encountered in proceedings either at law, by grievance or before the PLRB. However, the legislature has statutorily mandated these procedures and it is not appropriate for the court to act merely because there might be delays in other statutorily designated procedures. Our Supreme Court, in holding PERA constitutional, has recently seen fit to comment on these policy considerations:

> The adversarial judicial system is not an appropriate forum for analyzing whether this legislation works well or poorly, as intended or in ways unforeseen. If a statute does not work as expected, the legislature is the appropriate body to make the judgment and enact corrective legislation. That body has the competence to weigh the policy considerations and legislate initially and that body has the competence to reassess those considerations, the efficacy of the initial legislation, and the wisdom of continuing thereunder or changing course.

*Reichley by Wall v. North Penn School District,* 533 Pa. 519, 529–30, 626 A.2d 123, 129 (1993).

The proper course for the trial court here, as in *Bailey,* would have been to sustain the preliminary objections and deny the preliminary injunction. The grant of the Association's motion for preliminary injunction based on the Wage Law was improper in this case and thwarted the whole statutory scheme of collective bargaining.

Accordingly, the order of the trial court granting the Association's request for preliminary injunction is reversed and the orders denying the dissolution of the preliminary injunction and fixing a bond amount are vacated.

## ORDER

AND NOW, this 15th day of October, 1993, the order of the Common Pleas Court of Centre County, No. 1991–3298, dated December 31, 1991, granting Philipsburg–Osceola Education

Association's motion for preliminary injunction, is hereby reversed; the order of the Common Pleas Court of Centre County, No. 1991–3298, dated January 7, 1992, denying Philipsburg–Osceola School District's motion to dissolve the preliminary injunction is hereby vacated; and the order of the Common Pleas Court of Centre County, No. 1991–3298, dated January 7, 1992, fixing a bond amount at $5,000.000, is hereby vacated.