ASSOCIATION OF PENNSYLVANIA STATE COLLEGE AND UNIVERSITY FACULTIES, Petitioner

v.

PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2008.

Decided Dec. 16, 2008.

James L. Cowden, Harrisburg, for petitioner.

Carolyn M. Sargent, Harrisburg, for respondent.

Robert E. Durrant, Pittsburgh, for intervenor, Pennsylvania State System of Higher Education.

BEFORE: SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The Association of Pennsylvania State College and University Faculties, known as "APSCUF" (Union), petitions for review of a Final Order of the Pennsylvania Labor Relations Board (Board) that dismissed exceptions filed by the Union and made absolute and final the decision of the Board Secretary not to issue a complaint on a charge of unfair labor practices against the Pennsylvania State System of Higher Education (PASSHE). The Secretary determined that the matter was moot because the parties had ratified a successor collective bargaining agreement. The question presented here is whether the Board erred as a matter of law or acted arbitrarily or capriciously in determining that the unfair labor practice charge should be dismissed as moot on the basis that the issues raised were neither of great

public importance nor capable of repetition but likely to evade review.

## I

The Union and PASSHE were negotiating an agreement to succeed the one set to expire on June 30, 2007. On June 25, 2007, the Union filed an unfair practice charge with the Board alleging in part that PASSHE was violating Section 1201(a)(1) and (5) of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.1201(a)(1) and (5), by threatening employees with loss of already-earned pay and benefits should they strike.[1] The specification of charges first alleged that PASSHE published internet notices and mailed a letter on June 22, 2007 to bargaining unit members stating that PASSHE would terminate health care and other benefits to employees with summer school assignments if they went out on strike. Under the existing agreement, employee benefits received during the summer were earned by working the regular nine-month academic year, and employees with no summer school assignments automatically received benefits during the summer. PASSHE confirmed that it would continue benefits for those not working. *See* Specification of Charges, Ex. A; Reproduced Record (R.R.) 3a.

The specification of charges asserted second that PASSHE informed employees that anyone failing to report for a summer class after June 30, 2007 would be considered to be on strike, and their classes would be canceled and their pay and benefits stopped. The Union alleged that PASSHE unilaterally changed terms and conditions of employment by abrogating sick leave and other provisions of the collective bargaining agreement. Third, it asserted that PASSHE informed employees that any failure to report for a summer class after June 30, 2007 would result in a forfeiture of pay for the entire summer course, including for classes already taught, which allegedly unilaterally changed the terms and conditions of employment by abrogating their right to be paid for work performed and violated Section 1006 of the PERA, 43 P.S. § 1101.1006. The Union sought a restraining order against PASSHE pursuant to Section 1401 of the PERA, 43 P.S. § 1101.1401.

On July 2, 2007, the Union and PASSHE reached tentative agreement, subject to ratification. On August 23, 2007, the Union requested the Board to issue a complaint and repeated this request on October 26, 2007. On November 2, 2007, the Board Secretary issued an interim order dismissing the unfair labor practice charge as moot since the parties had ratified a new agreement. The Union filed exceptions requesting that the Board decide the case under recognized exceptions to the mootness doctrine, *i.e.,* the matter was of great public importance and the issues were capable of repetition but likely to evade review. The Board dismissed the Union's exceptions on December 18, 2007.

The Board stated that the Secretary dismissed the charges relating to Section

---

**1.** Section 1201(a)(1) of the PERA prohibits public employers from "[i]nterfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of [the PERA, Section 401, 43 P.S. § 1101.401 (providing the right of public employees to organize and to join employee organizations and to engage in concerted activities for the purpose of collective bargaining or other mutual aid)]." Section 1201(a)(5) prohibits public employers from "[r]efusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative."

1201(a)(1) and (5) of the PERA as moot, citing *Temple Ass'n of University Professionals, Local 4531 v. Temple University*, 25 PPER (LRP) ¶ 25121 (Final Order, 1994), and *AFSCME District Council 33 v. City of Philadelphia*, 36 PPER (LRP) 95 (Proposed Decision and Order, 2005), *aff'd*, 36 PPER (LRP) 158 (Final Order, 2005). The Board noted that issuance of a complaint is not a matter of right but is within its sound discretion, citing *Pennsylvania Social Servs. Local 668 v. Pennsylvania Labor Relations Board*, 481 Pa. 81, 392 A.2d 256 (1978), and that it will dismiss as moot any charge involving alleged bad-faith bargaining where the parties have reached an agreement but may hear a moot charge if it presents an issue of great public importance that is capable of repetition but likely to evade review. *Temple Ass'n of University Professionals.*

 The Board compared this case to *United Transp. Union Local 1594 v. Southeastern Pennsylvania Transportation Authority*, 37 PPER (LRP) 119 (Final Order, 2006), where the Board declined to issue a complaint in regard to an unfair labor practice charge after the parties entered into a new agreement and there were no allegations of residual effects of the employer's threats. The Board referred to *Medical Rescue Team South Authority v. Ass'n of Professional Emergency Medical Technicians*, 30 PPER (LRP) ¶ 30063 (Final Order, 1999), and it stated that continued litigation over alleged past misconduct that no longer affects the parties was not a matter of great public importance. It declined to speculate as to whether PASSHE will make the same alleged threats to bargaining unit members in the future and thus concluded that the Union failed to demonstrate that the underlying factual situation was one that is capable of repetition but likely to evade review.[2]

## II

The Union argues that the Board erred as a matter of law in dismissing the unfair labor practice charge as moot because the issues involved are of great public importance and are likely to recur yet evade review. The Union's charge alleged that PASSHE's threats violated Section 1201(a)(1) and (5) of the PERA by interfering with, restraining or coercing employees in the exercise of their rights to organize and to engage in concerted activities under Section 401. In its August 23, 2007 letter to the Board, the Union noted that even if the tentative agreement was ratified the conduct complained of was likely to recur in subsequent negotiations. It asserted that PASSHE's threats were in direct contravention of established legal precedent; therefore, the issues raised should be litigated leading to a cease and desist remedy to prevent future violations.

The Union points out that in a case addressing a nearly identical situation the Supreme Court stated: "Because the teachers have long since returned to the

2. The Court's review of a final order of the Board declining to issue a complaint is limited to a determination of whether the Board abused its discretion. *Pennsylvania Social Servs. Local 668*. In that case the Supreme Court rejected the Board's contention that its decision not to issue a complaint within its discretion under Section 1302 of the PERA, 43 P.S. § 1101.1302, was not appealable. Rather, the Supreme Court held that such a decision was appealable but that courts would not review the actions of governmental bodies or administrative tribunals involving acts of discretion in the absence of bad faith, fraud, capricious action or abuse of power. Possession of discretionary power does not make the action wholly immune from judicial review, but the review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary exercise of the agency's duties or functions.

classroom, this appeal is technically moot. Yet, the issue it raises is one of important public interest, capable of repetition, which is apt to elude review. Therefore, we shall entertain the appeal." *Jersey Shore Area School District v. Jersey Shore Educ. Ass'n,* 519 Pa. 398, 401, 548 A.2d 1202, 1204 (1988) (deciding after an enjoined strike was over the technically moot question of how to reconcile the right of teachers to strike under the PERA with the mandate under Section 1501 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 15-1501, for public schools to provide at least 180 days of instruction).

The Union represents that its agreements with PASSHE always have expired on June 30, which makes a strike likely over the summer if one is to occur. PASSHE's threats go to the heart of the ability of the Union to conduct an effective strike. The vast majority of the Union's members work the regular academic year, for which they receive benefits including medical insurance, dental and eye care and life insurance for the entire year. If any Union members accept summer work they receive extra pay but no extra benefits. Consequently, PASSHE's threats were to take away benefits that summer faculty already had earned solely because of the exercise of the right under Article IV of the PERA to engage in a lawful work stoppage. The Union maintains that this is contrary to the ruling in *Bailey v. Ferndale Area School District,* 70 Pa.Cmwlth. 628, 454 A.2d 207 (1982), that withholding accrued benefits from strikers is inherently destructive of employee rights and is an unfair labor practice. PASSHE also threatened to withhold pay for any classes that were taught and to cancel affected courses entirely rather than to consider possible completion of the courses, representing further threats intended to deter employees from exercising their right to strike.

In the Union's view the public concern is obvious: its unfair labor practices charge raises an issue of gross abridgment of the legal rights of a 5500-member bargaining unit. PASSHE's threat to punish those who exercise the right to strike granted by the PERA plainly interferes with the free exercise of that right, and the public interest demands that the Board take jurisdiction and address the charge. In addition, the Union argues that the capacity of this conduct to be repeated yet to escape review is obvious. The procedure for adjudication by a hearing examiner followed by Board consideration takes several months, at a minimum. Public employee strikes generally do not last very long because they are subject to being enjoined under Section 1003 of the PERA, 43 P.S. § 1101.1003, when they endanger the health, safety or welfare of the public, as was the case in *Temple Ass'n of University Professionals.* Without a decision on the charge, PASSHE is free to engage in the same illegal conduct in future negotiations.

The Board emphasizes the discretionary nature of its decision and the Court's limited nature of review. *See* n2, *supra.* The Board reiterates its reasons for dismissing the Union's unfair labor practice charge and for refusing to issue a complaint. It explains that the practice of dismissing unfair labor practice charges for mootness after successful negotiation of a new agreement furthers public policy behind the enactment of the PERA, which is "to promote orderly and constructive relationships between all public employers and their employes...." Section 101, 43 P.S. § 1101.101. In cases such as this involving appropriate labor policy to fulfill legislative intent, the Court should defer to the Board's expertise. *See Philadelphia*

*Housing Authority v. Pennsylvania Labor Relations Board,* 153 Pa.Cmwlth. 20, 620 A.2d 594 (1993).

The Board disputes the Union's comparison of this case to *Jersey Shore Area School District,* where the issue was whether a teachers' strike that threatened a school district's compliance with the 180–day instruction requirement thereby created a clear and present threat to the public health, safety and welfare, such that a court could enjoin the strike pursuant to Section 1003 of the PERA. That was an issue of public importance affecting all public school districts. The Board characterizes the present case as essentially raising a contractual issue of whether the parties' agreement requires PASSHE to continue providing pay and benefits to faculty members who strike during the summer term.

The Board relies for support upon *Commonwealth v. Joint Bargaining Committee for Pennsylvania Social Servs. Union,* 484 Pa. 175, 398 A.2d 1001 (1979), where the Pennsylvania Supreme Court concluded that the issue of whether a strike was properly enjoined was mooted by the parties' negotiation of a new contract. It further argues that the Union's reliance on *Bailey* is misplaced because the holding there was limited to a determination that exclusive jurisdiction was with the Board rather than the courts, and the statement that similar threatening conduct by the school district was arguably an unfair labor practice was dictum.

Intervenor PASSHE raises similar arguments, and it also stresses the limited nature of the Court's review and refers to the deference to be accorded the Board's interpretation of the PERA. *Office of Administration v. Pennsylvania Labor Relations Board,* 591 Pa. 176, 916 A.2d 541 (2007). PASSHE contends that the Board's decision to dismiss the unfair labor practice charge was consistent with prior decisions of the Court. In *Minersville Area School District v. Pennsylvania Labor Relations Board,* 130 Pa.Cmwlth. 475, 568 A.2d 979 (1989), the Court dismissed an appeal of an unfair labor practice charge where the employer had made the employee whole for damages (lost wages from improper suspension and discharge for physical reasons) before adjudication of the appeal. In *Temple University—of Commonwealth System of Higher Education v. Temple Ass'n of University Professionals, American Federation of Teachers Local 4531,* 139 Pa.Cmwlth. 441, 591 A.2d 1140 (1991), the Court held that the appeal of an injunction ordering striking teachers back to work was moot, stating that because the source of the dispute (the strike) had ended, there was no present controversy.

PASSHE refers to Section 1006 of the PERA. It provides that "[n]o public employe shall be entitled to pay or compensation from the public employer for the period engaged in any strike." It cites *Woodland Hills Educ. Ass'n, PSEA/NEA v. Woodland Hills School District,* 96 Pa. Cmwlth. 502, 508 A.2d 365 (1986), for the holding that fringe benefits such as medical, dental and vision benefits and life insurance are deemed to be "compensation" under Section 1006. PASSHE submits that it is far from clear that the information provided to faculty members in the June 2007 letter was wrong or inaccurate or that it amounted to interference, restraint or coercion of employees in the exercise of their rights under Article IV of the PERA or reflected bad-faith bargaining.

III

The Court is acutely aware of the discretionary nature of the Board's decision regarding the issuance of a complaint

on an unfair labor practice charge and the correspondingly limited nature of the Court's review. *See Pennsylvania Social Servs. Local 668.* The Court does not conclude that the Board demonstrated bad faith or fraud in its consideration of this matter. Nevertheless, the Court must determine whether the Board's deliberate decision not to issue a complaint and address the Union's unfair labor practice charge against PASSHE rises to the level of capricious or arbitrary exercise of the Board's duties or abuse of its discretion.

■ One well-established exception to the mootness doctrine in general and in matters before the Board is where the challenged conduct may be capable of repetition yet likely to evade review. PASSHE emphasizes the observation in *Minersville Area School District* that the Court would not decide moot questions except in rare instances including "when the question to be decided is by necessity a recurring one[,]" 568 A.2d at 980, but that is not the usual expression of this principle. In *Wilkes–Barre Area Educ. Ass'n v. Wilkes–Barre Area School District of Luzerne County,* 105 Pa.Cmwlth. 165, 523 A.2d 1183 (1987), where a union had organized a series of selective strikes against a school district after efforts failed to reach a new agreement and the trial court had issued a preliminary injunction against further strikes, this Court pointed out that the case was technically moot but it would not dismiss on that basis as the case involved " 'a question that is capable of repetition but likely to evade review if the normal rules on mootness are applied.' " *Id.* at 1185 (quoting *Joint Bargaining Committee,* 484 Pa. at 179, 398 A.2d at 1003). After its review of the merits, the Court reversed the trial court because no reasonable grounds existed for the injunction.

■ As the foregoing cases illustrate, the focus is on whether the conduct is capable of repetition; a petitioning party need not show that it is certain to be repeated. The petitioning party must demonstrate, however, that if the complained of conduct is repeated it likely will evade review.

Several of the cases upon which the Board and PASSHE rely involve appeals where injunctions were issued to return striking employees back to work. *See Joint Bargaining Committee; Temple University; Temple Ass'n of University Professionals.* In particular, some employees in *Joint Bargaining Committee* were disciplined after participating in a work stoppage, and later a grievance arbitrator disposed of the grievances. Inasmuch as the arbitrator's order was not appealed, a resolution of the merits of the injunction appeal could not affect the disciplinary action. In any event, such cases are not a useful guide here, in part, because the circumstances under which a particular strike becomes a threat to the public health, safety and welfare so as to be subject to injunction necessarily are unique. In the present case, the Union represents that its agreements with PASSHE always have expired at the end of June and that this makes a strike possible over the summer if one is to occur. Further, the specification of charges averred that faculty earned medical, dental and vision benefits and life insurance coverage for the entire year during their regular academic year and that summer school faculty earned extra pay but received no extra benefits. In the absence of a ruling on the question, PASSHE's conduct clearly is capable of repetition in a similar situation.

PASSHE postulates that the Union's threat to strike and the "pointed management reaction" to this threat are both bar-

gaining tactics. This formulation, however, glosses over the fact that the Union's proposal to exercise its right to strike unquestionably was legal activity, whereas PASSHE's threat to cease paying already accrued benefits if a strike occurred was of highly questionable legality and arguably violated Section 1201 of the PERA. As PASSHE notes, *Woodland Hills Educ. Ass'n* holds that fringe benefits including medical insurance are deemed to be compensation within the meaning of Section 1006. That case, however, is completely distinct from the matter here and even contradicts PASSHE's position.

In *Woodland Hills Educ. Ass'n* a school district continued paying premiums for fringe benefits including medical coverage and life insurance during a protracted thirty-seven-day strike in the regular school year from September to October 1982. The issue was whether the school district or the teachers had to absorb the monthly premium costs for fringe benefits during the strike. Although the school district ultimately provided 180 days of instruction, the teachers worked only 183 days rather than 186 days called for in their contract. This Court affirmed the trial court's ruling that the union must reimburse the school district for 3/186 of the total annual premiums (compensation) that the teachers had not earned. In the case *sub judice* the allegations are that faculty, during the preceding school year, already had earned the full amount of such premiums to be paid over the summer and that PASSHE's threat was to cease payment of already accrued benefits.

This Court has touched upon the question of the legality of such a threat in *Bailey,* where professional employees of a school district filed an action in common pleas court against the school district under the Wage Payment and Collection Law, Act of July 14, 1961, P.L. 637, *as amended,* 43 P.S. §§ 260.1–260.45, averring that the school district improperly withheld a portion of the employees' accrued wages and other compensation during a strike in reliance upon Section 1006 of the PERA. The trial court concluded that it lacked jurisdiction because the conduct described in the complaint arguably was an unfair labor practice and therefore was subject to the exclusive jurisdiction of the Board. This Court affirmed, stating that the claim was of the unlawful withholding of accrued wages or other compensation from the striking employees and that this conduct arguably constituted an unfair labor practice under Section 1201(a)(1) prohibiting interfering, restraining or coercing employees in the exercise of their rights.

In *Bailey* the Court referred to *Appeal of Cumberland Valley School District,* 483 Pa. 134, 394 A.2d 946 (1978), which held that a school district's discontinuance of fringe benefits after the expiration of the agreement and during negotiations constituted an unfair labor practice. The Court quoted *System Council T–4 v. National Labor Relations Board,* 446 F.2d 815, 819 (7th Cir.1971): "[A] category of benefits an employer may not deny consists of any rights earned by an employee before the strike began. Withholding accrued benefits from strikers is conduct 'inherently destructive' of employee rights and is an unfair labor practice unless the employer can prove a legitimate business purpose." *Bailey,* 454 A.2d at 211. Although the Board is correct that the Court did not decide in *Bailey* that withholding accrued pay and other compensation from strikers is an unfair labor practice, the conclusion that it arguably was an unfair labor practice so as to confer exclusive jurisdiction in the Board was necessary to the result and thus was not dictum. Under *Bailey* PASSHE's threatened conduct, and the threat itself, are of highly questionable

legality, and the Board has exclusive jurisdiction to decide the matter. *See Philipsburg–Osceola Educ. Ass'n v. Philipsburg–Osceola Area School District,* 159 Pa. Cmwlth. 124, 633 A.2d 220 (1993) (citing *Bailey* and concluding that even if the issue involved technically was moot, the substantive question regarding the deduction of monies from striking employees' pay for each day of a selective strike was capable of repetition and was within the Board's jurisdiction to decide).

The Board adopted the reasoning espoused by the New Jersey Public Employment Relations Commission in *Medical Rescue Team South Authority.* In that case the union of professional emergency medical technicians negotiated for months after the expiration of their agreement, and the employer then alleged (and a hearing examiner found) that the union substituted new demands after the parties had agreed upon certain terms. Before adopting the language from New Jersey concerning unwisely focusing on a divisive past, the Board stated:

> It is true that the subsequent consummation of a collective bargaining agreement does not always moot an unfair practice charge concerning bad faith bargaining tactics. Indeed, even if a charge is technically moot it can be decided on its merits if it involves a question that is capable of repetition but likely to evade review. *City of Philadelphia,* 22 PPER ¶ 2072 (Final Order, 1991).

Thus the principle that has now solidified into the Board's acknowledged practice of dismissing as moot any unfair labor practice charge involving alleged unlawful conduct related to contract negotiations where the parties have reached a new agreement was never intended to have such an all-inclusive application.

If the principle of deferential review of the Board's decision not to issue a complaint is applied as the Board and PASSHE urge, then the Board's decision would in effect become unreviewable, which is a result that the Supreme Court expressly rejected in *Pennsylvania Social Servs. Local 668.* The legality of PASSHE's conduct alleged here is highly questionable, and it raises an issue of the proper interpretation of the PERA rather than raising an issue of mere contract interpretation. PASSHE's conduct is capable of repetition yet likely and even fated to evade review if the Board again waits until the parties reach a new agreement, then pronounces the unfair labor practice charge to be moot and refuses to issue a complaint and as a result is able to evade addressing the conduct.

In *Paden v. Baker Concrete Constr., Inc.,* 540 Pa. 409, 412, 658 A.2d 341, 343 (1995), the Supreme Court observed: "We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." The conduct complained of here, namely PASSHE's threats to stop already-accrued medical and life insurance benefits (as well as already-earned pay) in the event of a strike, is by its nature an effective threat and may very well violate the PERA, and the Board has exclusive jurisdiction to decide the matter.

PASSHE's conduct clearly is capable of repetition yet likely to evade review if the Board is permitted through its acknowledged policy to effectively eliminate long-recognized exceptions to the ordinary rules of mootness, thereby allowing the complained of conduct to continue indefinitely. Under these specific circumstances, the

Board's refusal to issue a complaint, to exercise its exclusive jurisdiction and to decide the Union's unfair labor practice charge is manifestly unreasonable and consequently must be deemed an abuse of discretion.

## ORDER

AND NOW, this 16th day of December, 2008, the Final Order of the Pennsylvania Labor Relations Board is reversed, and this matter is remanded to the Board for appropriate proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.